**VIRGINIA:**

EXHIBIT B

## IN THE CIRCUIT COURT OF RICHMOND CITY

| | |
|---|---|
| **MARATHON RESOURCE MANAGEMENT GROUP, LLC,** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    Case No.: _CL18006268-00_ |
| | ) |
| **C. CORNELL, INC. dba CERTA PRO PAINTERS OF COLLEGE STATION,** | ) |
| | ) |
| | ) |
| Defendant | ) |

### COMPLAINT

COMES NOW the Plaintiff, Marathon Resource Management Group, LLC, by and through undersigned counsel, and hereby moves this court for judgment against the Defendant, C. CORNELL, INC. dba CERTA PRO PAINTERS OF COLLEGE STATION, in the amount of ONE HUNDRED FIFTEEN THOUSAND TWO HUNDRED SIXTY-THREE DOLLARS ($115,263.00) and in support thereof respectfully states the following:

1.    That the Plaintiff is a limited liability company which possesses the requisite certificate of organization to transact business in the Commonwealth of Virginia; and

2.    That to the best of the Plaintiff's knowledge and belief, the Defendant is a foreign corporation which possesses the requisite registrations and certificates to transact business; and

3.    That to the best of the Plaintiff's knowledge and belief, the Defendant transacts business using the names "Certa Pro Painters" and/or "Certa Pro Painters of College Station"; and

4.    That to the best of the Plaintiff's knowledge and belief, the Defendant's principal place of business is at 1511 Texas Avenue S, #137, College Station, TX 77840; and

5.    That to the best of the Plaintiff's knowledge and belief, the Defendant regularly conducts business with Virginia business and in other states across the United States; and

6.    That on September 22, 2017 Defendant, by and through its authorized agent and owner, Cliff Cornell, "DocuSigned" and returned to the Plaintiff the Master Subcontractor

Agreement, hereinafter referred to as "MSA" and that a copy of this contract is attached hereto, incorporated herein and marked Plaintiff's Exhibit "A"; and

7.      That Defendant has voluntarily agreed to submit to this court's jurisdiction through the MSA; and

8.      That Article 28, Section 28.3 of the MSA states "Regardless of the type of dispute resolution elected by MRMG (whether mediation, arbitration, or litigation), any such proceeding will be held in the City of Richmond, Virginia unless otherwise agreed upon by the parties. Additionally, the parties hereby agree that exclusive jurisdiction of any dispute arising from this Master Subcontract or the prosecution of the Work will be found in the Commonwealth of Virginia;" and

9.      That Article 30, Section 30.1 of the MSA states, "The validity, construction, interpretation, performance, and jurisdictional venue pertaining to this Master Subcontract shall be governed and construed in accordance with the laws of the Commonwealth of Virginia;" and

10.     That alternatively this court has personal jurisdiction over the Defendant through Virginia Code § 8.01-328.1(1), as the Defendant has transacted business in this Commonwealth by entering into a business contract with the Plaintiff; and

11.     That the Defendant, freely and without unlawful inducement, entered into a contract with the Plaintiff on September 22, 2017; and

12.     That to the best of Plaintiff's knowledge and belief, the Defendant was given sufficient time to review the contract; and

13.     That the Defendant to the best of the Plaintiff's knowledge and belief, signed in agreement and understanding of the contractual terms on September 22, 2017; and

14.     That on September 23, 2017, the Plaintiff signed and returned the same MSA, making it a fully executed contract; and

15.     That the Defendant to the best of the Plaintiff's knowledge and belief, through his attorney William Steven Steele, Esq., filed a lawsuit against the Plaintiff in The District Court of Brazos County, Texas on or about January 30, 2018 (attached as Plaintiff's Exhibit "B").

**COUNT ONE – Breach of Contract I**

16.     That the allegations set forth in Paragraphs 1 through 14 incorporated herein by reference as if set forth herein in their entirety; and

17.     That the Defendant, to the best of Plaintiff's knowledge and beliefs, has to-date made no objections or requests for clarification to the MSA provided by the Plaintiff and signed by Defendant; and

18.     That on or about January 30, 2018, William Steven Steele, Esq. on behalf of the Defendant initiated a civil action, under case number 17-003212-CV-272, in The District Court of Brazos County, Texas; and

19.     That the Defendant, and Defendant's attorney, to the best of Plaintiff's knowledge and belief filed this action in Brazos County, Texas knowing of the exclusive venue and jurisdiction clauses in the MSA; and

20.     That the Defendant, secured a Default Judgment against Plaintiff totaling $57,839.82 plus 6% accruing interest from March 22, 2018 in The District Court for Brazos County, Texas (attached as Plaintiff's Exhibit "C"); and

21.     That Plaintiff has never agreed to resolving any dispute in any jurisdiction or venue other than those explicitly stated in the MSA; and

22.     That Defendant's action of seeking dispute resolution outside of the contractually agreed upon forum constitutes a material breach of contract.

**COUNT TWO – Breach of Contract II**

23.     That the allegations set forth in Paragraphs 1 through 14, and 17 incorporated herein by reference as if set forth herein in their entirety; and

24.     That the Defendant, as a part of the MSA, agreed to not engage in non-authorized communication with the Plaintiff's customers; and

25.     That the Defendant has freely and willfully, through his actions and the actions of his agents, contacted a customer of the Plaintiff, CLS, Inc., without permission or authorization from the Plaintiff (attached as Plaintiff's Exhibit "D"); and

26.     That the Plaintiff has at no time given the Defendant permission or authorization to have independent contact with any customers of the Plaintiff; and

27.     That the Defendant's contact with Plaintiff's customer has caused reputation damage to the Plaintiff; and

28.     The Defendant's action of engaging in non-authorized communication with a customer of the Plaintiff constitutes a material breach of contract.

**WHEREFORE,** the Plaintiff, MARATHON RESOURCE MANAGEMENT GROUP, LLC demands judgment against the Defendant, for the following:

1.     As to COUNT ONE, the Plaintiff demands judgement against the Defendant in the amount of SIXTY THOUSAND TWENTY-SIX DOLLARS ($60,026.00).

2.     As to COUNT TWO, the Plaintiff demands judgment against the defendant in the amount of FIFTY-FIVE THOUSAND TWO HUNDRED SIXTY-THREE DOLLARS ($55,263.00).

3.     That the Plaintiff requests judgment against the Defendant in the total amount of ONE HUNDRED FIFTEEN THOUSAND TWO HUNDRED SIXTY-THREE DOLLARS ($115,263.00) plus interest at 6.0% per annum from 03/22/2018 until paid, reasonable attorney's fees and Plaintiff's costs expended herein.

4.     That the Plaintiff also requests this Honorable Court to grant any other and further relief it deems necessary.

MARATHON RESOURCE MANAGEMENT GROUP, LLC
By counsel

Stephen Moncrieffe, Esquire (VSB #83004)
Counsel for Plaintiff
Marathon Resource Management Group, LLC
10469 Atlee Station Road
Ashland, VA 23005
(888) 612-6613 Phone
(804) 368-0727 Facsimile
smoncrieffe@marathonrmg.com

DocuSign Envelope ID: 623D8295-974C-4F2D-9E63-D2EAEDA8F5F4

# MASTER
# SUBCONTRACT
# AGREEMENT

**PLAINTIFF'S**

**EXHIBIT**

**A**

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

## Table of Contents

ARTICLE 1 – GENERAL TERMS ..................................................................................4

ARTICLE 2 – CONTRACT DOCUMENTS ..................................................................5

ARTICLE 3 – SUBCONTRACTOR AS AN INDEPENDENT CONTRACTOR .....................6

ARTICLE 4 – COMMENCEMENT & COMPLETION OF WORK ...................................7

ARTICLE 5 – COMPENSATION & METHOD OF PAYMENT ......................................7

ARTICLE 6 – MRMG'S INFORMATION AND INTELLECTUAL PROPERTY .................9

ARTICLE 7 – SUBCONTRACTOR'S INFORMATION.................................................10

ARTICLE 8 – SUBCONTRACTOR'S WARRANTIES, STANDARD OF CONDUCT, AND
RESPONSIBILITIES....................................................................................................10

ARTICLE 9 – COMPLIANCE WITH APPLICABLE STATUTES, ORDINANCES, AND
REGULATIONS; OTHER APPROVALS........................................................................12

ARTICLE 10 – TAXES .................................................................................................12

ARTICLE 11 – SECURITY OF WORKSITE ................................................................12

ARTICLE 12 – HAZARDOUS MATERIALS & ENVIRONMENTAL COMPLIANCE.......13

ARTICLE 13 – POSSESSION PRIOR TO COMPLETION. ...........................................14

ARTICLE 14 – EXECUTION AND PROGRESS OF THE WORK ...................................15

ARTICLE 15 – APPROVALS, SUBMITTALS, INCONSISTENCIES, AND OMISSIONS. 17

ARTICLE 16 – SAFETY PRECAUTIONS AND PROCEDURES.....................................18

ARTICLE 17 – CHANGES IN THE WORK ...................................................................18

ARTICLE 18 – DELAYS ...............................................................................................19

ARTICLE 19 – RELEASE...............................................................................................20

ARTICLE 20 – INSURANCE..........................................................................................20

ARTICLE 21 – SUBCONTRACTOR'S INDEMNITY AND MRMG'S ASSUMPTION .......22

ARTICLE 22 – NON-SOLICITATION, NON-DISPARAGEMENT, AND NO
COMMUNICATION WITH PROPERTY OWNER(S), PROPERTY MANAGER(S), AND
LESSEE(S)...................................................................................................................23

ARTICLE 23 – REMEDIES ..........................................................................................24

ARTICLE 24 – REPRESENTATIVES AND NOTICES ..................................................25

ARTICLE 25 – SUCCESSORS AND ASSIGNS.............................................................26

ARTICLE 26 – TIME.....................................................................................................26

ARTICLE 27 – OTHER CONTRACTORS/SUBCONTRACTORS ...................................26

2

_____ Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

ARTICLE 28 – DISPUTE RESOLUTION ................................................................26
ARTICLE 29 – WAIVER ................................................................................................27
ARTICLE 30 – CHOICE OF LAW/VENUE ................................................................27
ARTICLE 31 – VOID, VOIDABLE..............................................................................27
ARTICLE 32 – LIMITATION OF LIABILITY..........................................................27
ARTICLE 33 – INTEGRATION ...................................................................................27
ARTICLE 34 – SURVIVAL ...........................................................................................28
ARTICLE 35 – ADDITIONAL TERMS, CONDITIONS..........................................28
EXHIBIT A.........................................................................................................................30
EXHIBIT B.........................................................................................................................31

3

Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

## MASTER SUBCONTRACT AGREEMENT

### MARATHON RESOURCE MANAGEMENT GROUP, LLC

THIS AGREEMENT is entered into on _____9/22/2017_____, by and between MARATHON RESOURCE MANAGEMENT GROUP, LLC, hereinafter referred to as "MRMG" and/or GENERAL CONTRACTOR" and _____CertaPro Painter of College Station_____, hereinafter referred to as " CertaPro Painter of College Station SUBCONTRACTOR".

### W I T N E S S E T H

That for and in the consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration the sufficiency and receipt of which is hereby acknowledged by all parties to this Master Subcontract, the parties hereto agree to the following terms and conditions.

### ARTICLE 1 – GENERAL TERMS

1.1 Subcontractor shall perform the work at the Subcontract Amount and by the work completion date more particularly described in a Work Order, as modified pursuant to change orders entered into as described by the terms of Article 17 of this Master Subcontract, and as otherwise described in this Master Subcontract (hereinafter referred to as "**Work**").

1.2 The following Exhibit(s) attached hereto are hereby incorporated into this Master Subcontract by reference:

a.   Exhibit A "Subcontractor's Certificate of Insurance"

b.   Exhibit B "W-9"

c.   Exhibit C "_____"

d.   Exhibit D "_____"

1.3   Subcontractor shall obtain, provide, and pay for all labor, materials, tools, equipment, machinery, supplies, transportation, water, heat, gas, electricity, and other utilities, facilities and services, permits, easements, required insurance, and supervision necessary for the proper performance and completion of the Work at the time or times specified in this Master Subcontract with no additional charge or expense to MRMG, or increase or decrease in the Subcontract Amount.

Subcontractor shall also be responsible for any related work in other sections of the Contract Documents, which is necessary for the proper and complete installation of Work under this Subcontract. The Subcontract Amount contained in any Work

4

_____Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

Order includes all freight, taxes, and delivery charges.

When the Subcontractor does not install all material furnished under this Subcontract, such material that is not installed is to be delivered F.O.B. jobsite.

1.4 The Work shall be performed timely, diligently, in a good and workmanlike manner, so as to not raise objection within the industry with new, good quality supplies, materials, equipment, and workmanship, all of which shall be free of defect or default. Work shall be performed in such a manner as to minimize the possibility of any annoyance, interference, or disruption to the occupants of the property and/ or their invitees.

1.5 While completing the Work, any and all trash debris caused by or in connection with the Work shall be promptly cleaned up and placed in containers supplied by Subcontractor and shall be removed by Subcontractor as often as necessary or as requested by MRMG in order to keep the property clean and as aesthetically pleasing as possible, as reasonably determined by MRMG. The obligations described in this section, shall also constitute part of the "Work," without additional cost or expense to MRMG, and Subcontractor shall receive no additional payment for such clean-up, removal, storage, and/ or disposal.

1.6 Upon completion of the Work, Subcontractor shall immediately, but under no circumstances more than 24 hours after the completion of the Work, remove all trash and debris (including the container described in section 1.5), as well as equipment, machinery, and surplus materials, however so designated, from the property and shall turn the property over to MRMG in a "broom clean" and "turnkey" condition. The obligations in this section shall constitute part of the "Work," without additional cost or expense to MRMG, and Subcontractor shall receive no additional payment for such clean- up, removal, storage, and/ or disposal.

## ARTICLE 2 – CONTRACT DOCUMENTS

2.1 The Contract Documents will consist of the Master Subcontract including any attachments or exhibits thereto, any Work Order(s) issued by MRMG, including any attachments or exhibits thereto, the **Prime Contract** (as defined in the work order) between the **Owner** (as defined in the Work Order) and MRMG, including drawings, specifications, and other documents forming or by reference made a part of the Prime Contract between MRMG and the Owner and any changes or amendments thereto that may be made after execution of this Master Subcontract, all of which shall be considered part of any Work Order by reference, as if fully set forth therein. The Subcontractor agrees to be bound to MRMG and the Owner by the terms and provisions thereof and by the terms and conditions of this Master Subcontract, and assumes toward MRMG all obligations which MRMG has assumed to Owner. Any inadvertent omission of a particular document in the above listed categories from the Contract Documents listing in any applicable Work Order(s) shall not constitute a waiver by MRMG of any terms of the omitted document.

5

Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

2.2 If the Prime Contract states a hierarchy of controlling documents, in the event of a conflict, the hierarchy stated in the Prime Contract controls. In the event that the Prime Contract does not state a hierarchy of controlling documents, then in the event of a conflict, the Master Subcontract controls over the remainder of the Contract Documents. In the event of a conflict between any of the remaining Contract Documents, the most stringent requirement shall control. Subcontractor assumes to MRMG all obligations that MRMG assumes to Owner in the Prime Contract, to the extent such obligations include and/or affect in any way the Work subcontracted herein. If Subcontractor commences any Work on the project, including but not limited to mobilization, Subcontractor shall be deemed to have accepted all terms and conditions set forth in the Master Subcontract and Prime Contract.

## ARTICLE 3 – SUBCONTRACTOR AS AN INDEPENDENT CONTRACTOR

3.1 Subcontractor agrees that it is an independent contractor with respect to the Work to be performed. MRMG shall not give instructions or orders directly to employees or workmen of the Subcontractor, except to persons designated as authorized representatives of the Subcontractor. Subcontractor shall receive directions from MRMG as to the end result only, as MRMG relies on the Subcontractor's expertise and knowledge. Subcontractor shall have full power and authority to select means, manner, and method of performance without control or direction by MRMG, except as provided for in this Master Subcontract.

3.2 All current employees of Subcontractor and any additional persons hired by Subcontractor to complete the Work will not for any purpose be considered employees or agents of MRMG. Subcontractor shall comply with all employment laws pertaining thereto, including, but not limited to, wage and hour, worker compensation, immigration, and worker and workplace safety and shall indemnify and hold MRMG harmless for any violations of any of the employment laws listed above. Subcontractor shall be liable for the prompt payment of all payrolls, payroll taxes (including, but not limited to, federal and state withholding taxes, social security taxes, federal and state unemployment taxes, and state workers' compensation insurance taxes), insurance premiums, license fees, outfitting expense, and all other expenses of Subcontractor and its employees in providing the Work.

3.3 Subcontractor's supervisors, employees, and agents furnished pursuant to this Master Subcontract shall be employees of the Subcontractor, and the Subcontractor shall exercise complete and exclusive control over all personnel and all aspects of Work provided, including, but not limited to, evaluation of the Subcontractor's personnel staffing, personnel screening, hiring, training, deployment, supervision, discipline, discharge, adherence to all relevant laws, statutes, and regulations, resolution of complaints and grievances, and all other matters necessary to provide the Work.

6

_____Initials

DocuSign Envelope ID: 823D6295-974C-4F2D-9E63-D2EAEDA8F5F4

3.4  Subcontractor shall defend, indemnify, and hold harmless MRMG from and against any and all claims, lawsuits or administrative proceedings (including legal fees and expenses) brought by Subcontractor's employees, agents, representatives, or any other legal representative or successor of any of them arising out of employees' employment with Subcontractor and participation in the Work.

## ARTICLE 4 – COMMENCEMENT & COMPLETION OF WORK

4.1 The Work shall commence and be completed within the times and dates specified in the Work Order, any change orders entered into as described by the terms of Article 17, and otherwise specified by the terms of this Master Subcontract. If no such dates are specified, the Work shall be commenced within three (3) days after the date of this Master Subcontract (or if not dated, then within three (3) days after both parties have signed and delivered this Master Subcontract), and shall be completed as soon as reasonably practicable thereafter.

4.2  Subcontractor's adherence to start and finish dates hereunder shall only be excused for reasons relating to: i) inclement weather conditions not reasonably anticipated for the time of year during which the Work is performed and ii) shortage of materials, labor strikes, and other causes beyond Subcontractor's reasonable control (except for shortage of materials, labor strikes or other causes relating to Subcontractor's financial condition or its failure to arrange and pay for adequate labor and materials).

4.3  For a delay to be considered as excusable, Subcontractor shall notify MRMG, in writing, within one (1) business day after a delay has occurred, setting forth its reasons for the delay and why the delay should be considered excusable. Subcontractor shall thereafter keep MRMG reasonably advised concerning the status of the delay and Subcontractor's efforts to recommence the Work.

## ARTICLE 5 – COMPENSATION & METHOD OF PAYMENT

5.1  MRMG agrees to pay the Subcontractor for the performance of the Master Subcontract, as specified herein, the sum set forth in any relevant Work Order(s), subject to additions and deductions for changes agreed upon or determined, as hereinafter provided.

a.  Invoices for all or any portion of Work shall be due to MRMG five (5) days after the last day of the month in which such Work was performed.  If Subcontractor fails to provide an Invoice to MRMG for more than thirty-one (31) days after the last day of the month in which Work was performed, it shall forfeit its right to payment of such Invoice for all labor, materials, tools, equipment, machinery, supplies, transportation, water, heat, gas, electricity, and other utilities, facilities and services, permits, easements, required insurance, and supervision provided or performed in the

7



Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

prosecution of such Work in such month. The acceptance of a check by Subcontractor constitutes payment in full for all services rendered up to the date of the check and MRMG is not responsible for payment of nay invoices presented by Subcontractor submitted after the acceptance of payment by Subcontractor.

b.  For construction projects or landscaping or hardscaping improvements, partial payments will be made to the Subcontractor each month in an amount equal to ninety per cent (90%) of the value, computed on the basis of prices set forth in the Work Order for the project, of the quantity, as determined by the Owner, Architect, or Engineer, or in their absence, by MRMG, of the work performed hereunder, less the aggregate of previous payments, but such partial payments shall not become due to the Subcontractor until fifteen (15) days after MRMG receives payment for such Work from the Owner, MRMG has received an invoice from Subcontractor, and the last day of the month in which Work was completed has expired.

b.  Invoices for reoccurring snow removal or landscape maintenance shall be paid in full on a monthly basis, but shall not become due to the Subcontractor until fifteen (15) days after MRMG receives payment for such Work from the Owner, MRMG has received an invoice from Subcontractor, and the last day of the month in which Work was completed has expired.

5.2  If MRMG receives payment from the Owner for less than the full value of labor or materials delivered to the site but not yet incorporated into the Work, the amount due to the Subcontractor on account of such labor and/or materials delivered to the site shall be proportionately reduced. All Work shall be subject to the approval of and acceptance by MRMG and Owner and no payment on account shall operate as an approval and acceptance of Work done or materials furnished, or any part thereof. Upon completion of performance of the Master Subcontract by the Subcontractor and final approval and acceptance of Subcontractor's Work and materials by MRMG and the Owner, MRMG will make final payment to the Subcontractor of the balance due under this Master Subcontract within ten (10) days after full payment for such Work and materials has been received by the MRMG from the Owner, MRMG has received an invoice from Subcontractor, and the last day of the month in which Work is completed has expired.

5.3  It is understood and agreed that any and all payments to Subcontractor are subject to the following conditions precedent: (1) payment, including final payment, being received by MRMG from Owner, (2) an itemized statement from Subcontractor of all materials incorporated into the Work or suitably stored at the job site, and all Work completed as of the date of the statement, (3) receipt by MRMG from Subcontractor of satisfactory evidence that all persons supplying labor or materials have been paid in full and have provided partial or complete release of all liens and claims; (4) the delivery of all applicable guarantees, warranties, bonds, manuals, as-built drawings, charts,  and similar items required with respect to Subcontractor's Work; (5) a complete release and waiver of liens by Subcontractor, and (6) in the sum of final payment, final acceptance of the Work by Owner. In no event shall

8



_____Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

Subcontractor be entitled to receive any payment from MRMG unless such amounts are received by MRMG from Owner, such payment being a condition precedent to payment to Subcontractor. It is specifically understood and agreed that Subcontractor bears the risk of Owner insolvency. In the event that MRMG is not paid because of Owner's insolvency or if for any other reason Owner fails to pay MRMG, Subcontractor specifically waives its rights against MRMG for such payments.

5.4 In the event a work stoppage by employees of MRMG or Owner exceeds a duration of seven (7) days, MRMG, at its option, may temporarily suspend service at locations covered by this Master Subcontract and adjust payment accordingly for the period during which service is not provided. Reduction will be on a pro-rata basis of scheduled visits not made versus total visits scheduled for all Work provided at all locations. Any Work performed by Subcontractor during the work stoppage must be approved by MRMG, in writing, prior to commencement of Work as per Article 17.

5.5   Notwithstanding the other terms of this Article, no payments will be due until the quality of the Work (or the applicable portion) is accepted by MRMG. Unless prohibited by law, payments may be withheld hereunder: (1) on account of defects in the Work (including materials incorporated therein and the performance thereof) not satisfactorily remedied, as determined by MRMG; (2) as a set-off against losses or claims by MRMG against Subcontractor for any breach or breaches of this Master Subcontract or amounts owed by Subcontractor to MRMG under other contracts or agreements, including, without limitation, damage to the property or injury to the person; (3) persistent failure to carry out the Work in accordance with this Master Subcontract; or (4) damage to MRMG or another subcontractor or contractor caused by Subcontractor.

5.6   Unless otherwise specified in the Master Subcontract or applicable Work Order, payment or performance bonds are not required. If such bonds are required, Subcontractor shall furnish payment and performance bonds for the full amount of the Subcontract Amount, including any and all addendums or extras. Such bond is to be in a form satisfactory to General Contractor and by a surety legally authorized to write such bonds in the State where the project is located. In the event Subcontractor shall fail to properly provide such requested bonds, General Contractor may terminate this Master Subcontract and re-let the Work to another Subcontractor and all General Contractor's costs and expenses incurred thereby, including without limitation costs of delay, administrative costs, and costs of the replacement subcontractor over and above Subcontractor's remaining Contract balance, shall be paid by Subcontractor.

5.7   MRMG may make payments hereunder jointly to Subcontractor and any other subcontractors and suppliers.

## ARTICLE 6 – MRMG'S INFORMATION AND INTELLECTUAL PROPERTY

6.1   All MRMG, Owner, Architect, surveyor, or engineer specifications, drawings,

9



Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

blueprints, sketches, schematics, models, samples, tools, computer or other apparatus programs, technical or business information, or data, written or oral (all hereinafter designated "MRMG's Information") obtained by Subcontractor hereunder or in contemplation hereof shall remain the property of MRMG, Owner, Architect, surveyor, or engineer and shall not be reproduced, retained, or otherwise used by Subcontractor without the express written consent of MRMG or other owner. All copies of MRMG's Information in written, graphic, or other tangible form shall be returned to MRMG upon request. Unless MRMG's Information was previously known to Subcontractor free of any obligation to keep it confidential, or has been or is subsequently made public lawfully by a third party, it shall be kept confidential by Subcontractor, shall be used only in the filling of orders or performing Work under this Master Subcontract, and may not be used for other purposes except upon such terms as may be agreed upon between MRMG and Subcontractor in writing.

6.2  Subcontractor may not use MRMG's trademarks, logos, or slogans, nor advertise Subcontractor's relationship with MRMG without prior written consent of MRMG.

## ARTICLE 7 – SUBCONTRACTOR'S INFORMATION

7.1  Subcontractor's specifications, drawings, blueprints, sketches, schematics, models, samples, tools, computer or other apparatus programs, technical or business information, or data, written, oral, or otherwise (all hereinafter designated "Subcontractor's Information"), furnished by Subcontractor to MRMG under this Master Subcontract or in contemplation of this Master Subcontract, shall not be considered by Subcontractor to be confidential or proprietary.

## ARTICLE 8 – SUBCONTRACTOR'S WARRANTIES, STANDARD OF CONDUCT, AND RESPONSIBILITIES

8.1  Subcontractor warrants to MRMG that the Work provided under this Master Subcontract shall be performed in a good and workmanlike manner to MRMG's satisfaction and not contrary to local, state, and/or federal law. This warranty shall survive inspection, test, acceptance, use, and payment.

8.2  Subcontractor shall pay all costs associated with its vehicles including maintenance items, insurance, licenses, permits, and fees.

8.3  Subcontractor will instruct its employees in the proper use of all power equipment, chemicals, supplies, and tools in order to minimize fire and safety hazards and to comply with applicable federal, state, and local laws including, but not limited to codes, directives, and orders.

8.4  The Subcontractor will, at its own expense, provide and instruct its employees to use safety apparel or protective clothing that is required by law.

10


Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

8.5   Subcontractor may store, but is solely liable for the security of, materials and equipment on designated property, if designated space is available. Subcontractor shall keep rooms and/or storage space clean and orderly at all times. All materials shall be stored in a neat and orderly manner and shall be kept clean and odor free.

8.6   Subcontractor shall adequately protect the property, adjacent property, and the public.

8.7   Subcontractor agrees to turn the Work over to MRMG in good condition and free and clear from all claims, encumbrances, and liens for labor, services, equipment, or materials, and should Subcontractor, during the progress of the Work or at any time thereafter, fail to pay for any labor, services, equipment, and materials used or purchased for use in connection with the prosecution of the Work, MRMG may, at its option and without notice to Subcontractor, pay and discharge all such claims, encumbrances, and liens and charge the amounts thereof to Subcontractor. In the event suit is filed by any person, firm, or corporation against the Owner, MRMG, or MRMG's surety asserting a claim or lien for labor, services, equipment, or materials used or purchased for use in the Work, Subcontractor will, at its own cost and expense, including counsel fees, defend such suit and pay any judgment rendered therein.

8.8   Subcontractor agrees to subordinate and does hereby subordinate any and all mechanic's and materialman's lien rights which Subcontractor may have under this Master Subcontract and the lien laws or constitution of any state in which the Work is being performed to any lien, deed of trust, or mortgage heretofore or hereafter granted to secure any construction loan and/or permanent loan and any renewals, extensions, or modifications thereof. Subcontractor shall furnish such statements, agreements, and certificates as construction and/or permanent lenders of the Owner may require.

8.9   Subcontractor warrants to the Owner, the Architect, and MRMG that all materials and equipment furnished shall be new unless otherwise specified, and that all Work shall be of good quality, free from faults and defects, and in conformance with the Contract Documents. Subcontractor shall at its sole cost, inspect the Work in place upon the request by Owner, Architect or MRMG to investigate any alleged defect in the Work and shall promptly replace defective materials, workmanship, and equipment and re-execute defective work as required of MRMG under the Contract Documents. If within one (1) year from the date of substantial completion of the Project, or such longer period of time as may be prescribed by law or by the terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be defective or not in accordance with the Contract Documents, Subcontractor shall, at its sole cost, correct it and any other work affected thereby promptly after receipt of a written notice from MRMG to do so. This one year time period for correction by Subcontractor is in addition to, and not in lieu of, all warranties that exist at

11

**Initials**

DocuSign Envelope ID: 823D8285-974C-4F2D-9E63-D2EAEDA8F5F4

common law or by statute. These warranty obligations shall survive the
termination of the Master Subcontract.

## ARTICLE 9 – COMPLIANCE WITH APPLICABLE STATUTES, ORDINANCES, AND REGULATIONS; OTHER APPROVALS

9.1 In performing the Work required under this Master Subcontract, Subcontractor
shall comply with all applicable federal, state, county, and/or municipal statutes,
ordinances, regulations, orders, directives, and administrative orders, including
without any limitation any licensing, bonding, and permit requirements at
Subcontractor's sole cost and expenses.

## ARTICLE 10 – TAXES

10.1 Subcontractor shall comply with all federal, state, and local tax laws, social
security acts, and unemployment compensation acts insofar as applicable to the
performance of this Master Subcontract.

10.2 There shall be added to the Subcontract Amount set forth herein an amount
equal to any applicable local, state, or federal taxes, however designated, that may be
validly levied or based upon this Master Subcontract or upon the material and/or
Work furnished hereunder, excluding, however, ad valorem personal property taxes,
state and local privilege and excise taxes based on gross revenue, taxes based on or
measured by Subcontractor's net income, and any taxes or amounts in lieu thereof
paid or payable by separate items on Subcontractor's invoices, and such taxes shall
not be included in Subcontractor's prices. Subcontractor hereby agrees to provide
written evidence from any third party imposing any taxes that are added to the
Subcontract Amount. This evidence shall confirm that the taxes are required by the
applicable governmental authority. MRMG shall have the right to have Subcontractor
contest with the imposing jurisdiction, at MRMG's expense, any such taxes that
MRMG deems are improperly levied.

10.3 MRMG shall not be required to pay or otherwise be liable or responsible for,
and Subcontractor hereby indemnifies, defends, and holds MRMG harmless
against, any penalty, additional tax, costs, or interest that may be assessed or levied
by any taxing authority as a result of the failure of Subcontractor to file any return,
form, or information statement that may be required by such taxing authority.

## ARTICLE 11 – SECURITY OF WORKSITE

11.1 Subcontractor acknowledges and agrees that some properties where the Work
will be performed may be associated with highly confidential information or
contents and are subjected to extensive security measures. Subcontractor shall
comply with all applicable rules and requirements of MRMG related to security and
secrecy of the property, property owner(s), property manager(s), and property
lessee(s).

Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F6F4

11.2 If necessary, MRMG will arrange for access to property and/or buildings, including the provision of keys or access cards, as required for Subcontractor to complete the Work. Subcontractor shall be responsible for the safe keeping of all keys and/or access cards issued to Subcontractor hereunder. *All keys and/or access cards so issued shall not be duplicated for any reason.* All keys and/or access cards will be returned to MRMG when requested by MRMG, or upon cancellation of this Master Subcontract. Subcontractor agrees to notify MRMG in writing immediately in case of lost or stolen keys and/or access cards. If loss of keys and/or access cards requires changing the combination of locks and/or changing other access equipment, the cost of labor, material, and loss of property shall be paid by the Subcontractor or charged against the Subcontract Amount owed to Subcontractor, in the discretion of MRMG.

11.3 The Subcontractor specifically agrees that he is responsible for the protection of its Work until final completion and acceptance thereof by the Owner and that he will make good or replace, at no expense to MRMG or the Owner, any damage to his Work which occurs prior to said final acceptance.

## ARTICLE 12 – HAZARDOUS MATERIALS & ENVIRONMENTAL COMPLIANCE

12.1 Subcontractor shall specifically comply with all federal, state, and local laws, rules, and regulations related to the maintenance, disposal, existence, handling, and/or storage of hazardous substances on the property where the Work is to be performed. Subcontractor agrees that it will not introduce any such hazardous substance to the property except in accordance with such laws, rules, and regulations. Subcontractor hereby indemnifies and holds MRMG harmless for any liabilities or damages of any kind incurred by MRMG as a result of Subcontractor's failure to introduce, maintain, dispose of, or otherwise handle any hazardous substances in accordance with such laws, rules, and regulations.

12.2 A material data sheet (Occupational Safety and Health Act, or OSHA Form 174 revised) must be included in ALL Subcontractor's shipments that contain hazardous material as specified in Department of Transportation Title 49 and OSHA Standards or any applicable local, state, or federal laws.

12.3 Gasoline or other gasoline-fueled equipment and other flammable materials shall not be stored inside or in close proximity to the property. Subcontractor is solely liable for any damage and shall hold MRMG harmless for any damage caused as a result of such nonconforming storage of flammable material. Material that requires precautionary warnings shall have affixed to all containers such labels or markings as are prescribed and approved by law, regulatory agency, or this Master Subcontract. The marking or labeling of material containing hazardous or toxic material, substances, or wastes shall be in accordance with all federal, state, and local laws, ordinances, rules, and regulations.

13

 Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

12.4 All containers containing delicate or fragile items shall be marked to clearly identify this condition. These markings shall be placed on not less than one side or end of each container. Subcontractor shall adhere to OSHA, 29 CFR Section 1910.1200 and any other applicable federal, state, and/or local laws, rules, regulations, and ordinances for any and all such material.

12.5 If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the property by the Subcontractor, the Subcontractor's subcontractors, or anyone directly or indirectly employed by the Subcontractor, the Subcontractor shall, prior to use by or exposure of any persons on the property to such substance, give written notice of the chemical composition thereof to MRMG in sufficient detail and time to permit compliance with such laws by MRMG, other subcontractors, and other employers on the property.

12.6 Subcontractor hereby warrants and certifies that the Subcontractor's performance under this Master Subcontract, the materials supplied, and/or Work performed by the Subcontractor, its agents, or subcontractors hereunder shall conform and comply with all applicable federal, state, county, and municipal laws, statutes, regulations, rules, ordinances, and codes regarding the packaging, handling, use, storage, processing, transportation, treatment, and/or disposal of material which is, or contains, hazardous or toxic wastes, substances, or materials (hereinafter "Hazardous Material"). Subcontractor agrees to provide assistance to MRMG of an advisory nature in the use and disposal of Hazardous Material purchased under this Master Subcontract.

12.7 Subcontractor shall submit to MRMG a listing of Hazardous Material used at each location in the execution of this Master Subcontract.

12.8 Subcontractor shall obtain all licenses, permits, and authorizations from all state, federal, and local governments and agencies that have, or may assert, jurisdiction over any aspects of Subcontractor's performance hereunder or that of its employees, agents, or subcontractors.

12.9 Subcontractor agrees to notify MRMG at least five business days (5) days prior to shipment of Hazardous Material. Each self-contained unit and carrier shall be marked identifying the existence of a Hazardous Material or substance and its name. MRMG shall have the right to cancel an Order for Hazardous Material within ten (10) days after such a notification from Subontractor without any liability to MRMG whatsoever.

12.10 Subcontractor shall indemnify, defend, and save MRMG and the Owner(s), and their their directors, officers, employees, and agents, from any violation or breach of the terms of this Article. Such indemnity obligation shall survive the cancellation of this Master Subcontract.

**ARTICLE 13 – POSSESSION PRIOR TO COMPLETION.**

14

**Initials**

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

13.1 Whenever it may be useful for MRMG to do so, MRMG shall be permitted to occupy and/or use any portion of the Work which has been either partially or fully completed by the Subcontractor before final inspection and acceptance thereof by the Owner, but such use and/or occupation shall not relieve the Subcontractor of its guarantee of said Work and materials nor of its obligation to make good at its own expense any defect in materials and/or workmanship which may occur or develop.

## ARTICLE 14 – EXECUTION AND PROGRESS OF THE WORK

14.1 The Subcontractor shall furnish all labor, supervision, tools, equipment, materials, and supplies necessary for the performance of this Master Subcontract in a proper, efficient, and good and workmanlike manner. The Subcontractor shall prosecute the Work undertaken in a prompt and diligent manner whenever such Work, or any part of it becomes available, or at such other time or times as MRMG may direct, and so as to promote the general progress of the entire construction, and shall not, by delay or otherwise, interfere with or hinder the work of MRMG or any other subcontractor. Any materials that are to be furnished by the Subcontractor hereunder shall be furnished in sufficient time to enable the Subcontractor to perform and complete its Work within the time or times provided for herein. The Subcontractor agrees to reimburse MRMG for any and all liquidated or other damages that may be assessed against MRMG which are attributable to or caused by the Subcontractor's failure to furnish the materials and/or perform the Work required by this Master Subcontract within the time fixed or in the manner provided herein. The payment of such damages shall not release the Subcontractor from its obligations otherwise to fully perform this Master Subcontract and to pay all other damages MRMG may sustain by reason of Subcontractor's failure to so perform this Subcontract. Upon written request by MRMG, the Subcontractor shall furnish to MRMG such evidence as MRMG may require relating to the Subcontractor's ability to perform this Master Subcontract in the manner and within the time specified herein.

14.2 In the event that Subcontractor fails to provide sufficient numbers of skilled workmen, or fails to adequately prosecute the Work, or fails to pay any laborer, material manufacturer, supplier, or sub-subcontractor when due, or fails to perform any obligation under this Master Subcontract, MRMG shall have the right, if it so elects and without prejudice to any other rights which it may have, upon 48 hours written notice, to terminate the Subcontractor for default and to take over the Work, or any portion thereof, and all tools, supplies, and equipment, and complete performance of this Master Subcontract by whatever method MRMG deems most expeditious. MRMG may also, without taking over the Work or terminating this Master Subcontract, furnish the necessary supervision, labor, and materials to satisfy any obligation under the Subcontract, and charge such expense to Subcontractor. Upon receipt of written notification, Subcontractor shall assign to MRMG any agreements Subcontractor may have with suppliers, sub-subcontractors, or others pertaining to the Work. MRMG shall be under no

15



Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

obligation to effectuate such assignment.

14.3  In the event that MRMG elects to proceed under the foregoing provision, Subcontractor shall be responsible for all costs, loss, and expense incurred by MRMG including but not limited to financing costs, office overhead, attorney's fees, and administrative costs and any other indirect costs incurred, plus all labor, equipment, materials, supervision, and other charges incurred under the foregoing provision.

14.4  The Subcontractor shall keep on the site, during the progress of its Work under this Master Subcontract, a competent superintendent satisfactory to MRMG who shall be the authorized representative of the Subcontractor as to any matters necessary or incidental to its performance at the site in accordance with the provisions of this Article. Directions and communications to such superintendent from MRMG in connection with such performance shall be treated as directions and communications to the Subcontractor. Subcontractor shall not utilize any person for Work on the project who is objectionable to MRMG.

14.5  Time is of the essence. Subcontractor agrees to follow the progress of the Work, to start and continue at the direction of MRMG, and to meet all interim and final completion dates as set forth in any applicable construction schedule furnished by MRMG. Subcontractor also agrees to provide MRMG, upon request, with any data or information required by MRMG to prepare or revise the project schedule.

14.6  Should MRMG provide Subcontractor with progress schedules for the performance of the Work, it is understood and agreed that said progress schedules are based upon the reasonable expectation that the conditions of the project will be such as will permit the Subcontractor to perform as therein provided; however, it is further understood and agreed that such schedules are not guarantees that Subcontractor's Work can be performed within the time periods at durations or in the sequence set forth therein, and such schedules may accordingly be changed or revised by MRMG, in its sole discretion, from time to time as circumstances may require. Such progress schedules, if any, do not relieve Subcontractor of the obligation, as set forth herein, to follow the progress of the Work and the directions of MRMG.   Nothing herein shall be construed as requiring MRMG, either expressly or impliedly, to furnish Subcontractor with progress schedules for Subcontractor's Work.

14.7  Subcontractor agrees to keep all work areas free from accumulation of waste materials, dirt, trash, and debris caused by its operation, and shall comply with all directions of MRMG, Owner, or any inspector having jurisdiction regarding such clean up. If Subcontractor fails to fulfill its obligations under this section, MRMG may, without notice, perform such work and charge the cost or a proportionate share of the cost to Subcontractor.

14.8  MRMG shall have the absolute right to terminate Subcontractor for

16

 Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

convenience at any time during the course of this Master Subcontract with a written notice of termination effective upon receipt by Subcontractor. If there has been a termination of the Prime Contract, Subcontractor shall be paid the amount due from the Owner for its Work, as provided in the Contract Documents, after MRMG receives payment from the Owner and as otherwise provided in Article 5. If the Prime Contract has not been terminated, Subcontractor will be paid the reasonable value of the Work performed prior to termination plus any direct close-out costs, but in no event shall Subcontractor be entitled to payment for unabsorbed overhead, anticipatory profits, or any damages of any kind or nature, direct or indirect, incidental or consequential. MRMG may, in its sole discretion, utilize its right to terminate Subcontractor for convenience in lieu of compliance with the conditions of termination for default as set forth in Section 14.2 of the Master Subcontract.

## ARTICLE 15 – APPROVALS, SUBMITTALS, INCONSISTENCIES, AND OMISSIONS.

15.1  All shop drawings, samples, or other submittals prepared by the Subcontractor shall be submitted for approval of the Architect or Engineer through MRMG and all other communications between the Subcontractor and the Architect, Engineer, or Owner with respect to Work to be performed under this Master Subcontract shall be transmitted through MRMG. Any such shop drawings, samples, or other submittals must be submitted to MRMG within twenty (20) calendar days of receipt of any applicable Work Order, or such earlier time required by MRMG to meet the project schedule. Submittals shall be provided in the quantity required by MRMG, and shall be furnished in accordance with any MRMG submittal procedures. The approval of any Subcontractor submittal shall not be deemed to authorize deviations, substitutions, or changes in the requirements of the Contract Documents unless express written approval is obtained from MRMG authorizing such deviation, substitution or change.

15.2  Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Subcontractor to notify MRMG in writing within three (3) working days of the discovery by Subcontractor. Upon receipt of such notice, MRMG shall instruct Subcontractor as to the measures to be taken and Subcontractor shall comply with MRMG's instructions.

15.3  Immediately upon award of any Work Order or Subcontract, Subcontractor shall furnish MRMG in writing the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. MRMG will reply to Subcontractor in writing stating whether it has reasonable objection to any such proposed person or entity. Subcontractor shall not contract with a proposed person or entity to which MRMG has made reasonable and timely objection. If MRMG has reasonable objection to a person or entity proposed by Subcontractor, Subcontractor shall propose another to whom MRMG has no reasonable objection and Subcontractor shall have no claim for additional compensation for such required change.

17

Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

## ARTICLE 16 – SAFETY PRECAUTIONS AND PROCEDURES

16.1 In the performance of this Master Subcontract the Subcontractor shall, at no additional cost to MRMG, comply with MRMG's safety rules and regulations, and with all applicable safety laws, rules, and regulations of any nature whatsoever whether federal, state, municipal, or otherwise. In addition, the Subcontractor shall indemnify MRMG and save it harmless from any and all loss, cost, and expense (including, but not limited to, attorney's fees and any fines, penalties, or corrective measures imposed on MRMG), arising out of or occasioned in any way by the failure of the Subcontractor, or any of its officers, agents, employees, or servants, or any subcontractors or other persons directly or indirectly engaged by Subcontractor in the performance of Work hereunder, to comply with any such safety laws, rules, and regulations.

16.2 The Subcontractor shall report, using the procedures specified in Article 24, to MRMG within three (3) days, an injury to an employee or agent of the Subcontractor which occurred while at the location(s) where the Work is being performed.

## ARTICLE 17 – CHANGES IN THE WORK

17.1 The Subcontractor expressly agrees that no changes will be made, nor extra work performed, nor changes made in the quality or quantity of materials furnished, unless such change is previously authorized in writing by MRMG.   Any request for a Change Order should be directed immediately to MRMG for approval. Having a superintendent sign a time card or a work order sheet does not relieve Subcontractor of the responsibility to submit proposed changes in writing.  Until a change order request with a specific dollar amount is approved in writing by MRMG or MRMG's authorized representative, Subcontractor is at risk of not getting paid for the additional work in question.

17.2 MRMG may at any time, by written order of MRMG's authorized representative, and without notice to the Subcontractor's sureties, make changes in, additions to, and omissions from the Work to be performed and materials to be furnished under this Subcontract, and the Subcontractor shall then promptly proceed with the performance of this Master Subcontract as so changed. Any increase or decrease in the Subcontract Amount resulting from such changes shall be agreed upon in writing by the parties hereto, such agreement not being valid unless signed by an authorized officer of MRMG. Any claim for adjustment of the Subcontract Amount under this Section must be made in writing within ten (10) calendar days from the date such changes were ordered by MRMG or within such time as is necessary to allow MRMG's compliance with the notice provisions of the Prime Contract in order to make any corresponding claim against Owner for such adjustment.  Failure to make a timely claim for additional compensation under this section constitutes waiver of such claim. MRMG will approve or deny such claim

18



_____Initials

DocuSign Envelope ID: 823D6295-974C-4F2D-9E63-D2EAEDA8F5F4

within five (5) days of such claim. Upon approval of such claim in writing by MRMG, the Master Subcontract will be equitably adjusted to account for additional work performed pursuant to the ordered change in the Work. If the adjustment is due to any act, omission, or direction of Owner, no adjustment shall be made except under section 5.5.

17.3  If the Subcontractor disputes the method of adjustment, the method and the adjustment shall be determined by MRMG on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Subcontract Amount as set forth in the applicable Work Order, an allowance of 10% for overhead and profit or such other allowance as may be required by the Prime Contract. Subcontractor shall maintain for MRMG's review and approval an appropriately itemized and substantiated account of labor costs (including fringe benefits), costs of materials, supplies, and equipment, bond and insurance premiums, permit fees and taxes, and costs of additional supervision and field office personnel necessitated by the change.

17.4  MRMG is not responsible for site conditions that are unknown to MRMG at the start of construction. Should such conditions be discovered by Subcontractor during the course of construction, Subcontractor may make a claim for any additional time necessary to resolve such condition in the manner outlined in the preceding paragraph. In the event such a claim is made, Subcontractor will only be entitled to such extension of the time of performance as is granted to MRMG by Owner. Subcontractor will not be entitled to damages of any type or an increase in Subcontract Amount due to such unforeseen conditions.

## ARTICLE 18 – DELAYS

18.1  In the event the Subcontractor's performance of this Master Subcontract is delayed, disrupted, or interfered with by acts of the Owner, MRMG, or other subcontractors, it may request an extension of the time for performance of same, as hereinafter provided, but shall not be entitled to any increase in the Subcontract Amount or to damages or additional compensation as a consequence of such delays, disruption, or interference, except to the extent of any amounts that MRMG may, on behalf of the Subcontractor, recover from the Owner for such causes.

18.2  No allowance for an extension of time, for any cause whatever, shall be claimed by the Subcontractor unless the Subcontractor shall have made written request upon MRMG for such extension within forty-eight (48) hours after the cause thereof occurred, or, if the contract between MRMG and Owner provides for a shorter period, within sufficient time to permit MRMG to give notice to the Owner within the time allowed by the Prime Contract for such notice.

18.3  In the event that the Work of Subcontractor shall be delayed, hindered, or disrupted by the act or omission of any other subcontractor, it is understood and agreed that MRMG shall not be responsible for any cost, loss, or damage incurred by Subcontractor,

19



Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

it being agreed that an extension of the contract shall be Subcontractor's sole compensation. The Subcontractor expressly waives and releases any and all claims against MRMG due to such acts or omissions by other subcontractors. Nothing contained herein shall preclude any Subcontractor from proceeding directly against another subcontractor for costs due to such delays, disruptions, or interferences by such other Subcontractors.

18.4 In the event the Subcontractor is damaged by any act, omission, or delay by Owner or Architect, or by changes, additions, or deletions by Owner, Subcontractor agrees to be bound to whatever dispute remedy is contained in the contract between Owner and MRMG. Subcontractor agrees to submit such claim to MRMG in a timely manner and in accordance with applicable procedures and requirements of the contract between Owner and MRMG, and to bear all cost and expense, including attorney's fees, attributable to the preparation and prosecution of such claim. Subcontractor agrees to be exclusively bound by the remedies of this paragraph, and shall maintain no action against MRMG independently. Subcontractor shall not be entitled to receive from MRMG a greater amount than MRMG recovers from Owner, and Subcontractor agrees that it will accept such amounts as are received by MRMG as full discharge and satisfaction of all such claims.

## ARTICLE 19 – RELEASE

19.1 To the extent permitted by applicable law, Subcontractor agrees to look solely to its insurers and does hereby release and waive any and all rights it has now, or may in the future have, to recover against MRMG, its trustees, beneficiaries, general and limited partners, officers, agents, servants, affiliates, or employees (collectively, the Releasees) for loss or damage to property, or personal injury or death (including, but not limited to, claims for damage to property of Subcontractor and injury to, or death of, employees of Subcontractor and claims for contribution, indemnity, or reimbursement of workers' compensation benefits), in any way under or in connection with this Master Subcontract. Subcontractor hereby waives all rights of subrogation of its insurers with respect to claims against the Releasees.

## ARTICLE 20 – INSURANCE

20.1 Subcontractor shall at all times during this Master Subcontract and any extension or continuation of, at its sole cost and expense, obtain and maintain the following policies of insurance naming Marathon Resource Management Group, LLC (d/b/a MRMG), its fellow officers, partners, agents, and employees and the Owner as additional insureds thereunder, and providing that no such insurance may be canceled without thirty (30) days written notice to MRMG by certified mail:

(i)     A comprehensive commercial general liability policy, with a general aggregate of at least $2,000,000, with completed operations coverage aggregate of at least $2,000,000 and a completed operation single occurrence limit of at least $1,000,000, and single limit per occurrence

**Initials**

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

    coverage of $1,000,000 for bodily injury, death, property damages, and personal injury liability coverage;

    (ii)    Automobile public liability policy to cover vehicles used by Subcontractor with combined single limits of $1,000,000 per occurrence;

    (iii)    Contractually assumed liability to cover the liability assumed by the Subcontractor under this Master Subcontract in the amount of at least $1,000,000 combined single limit per occurrence for bodily injury, death, or property damages;

    (iv)    Worker's Compensation insurance - $100,000 each accident, $100,000 each employee by disease, $500,000 policy limit by disease

    (v)    Employer's Liability insurance in the amount of at least $1,000,000 per occurrence; and

    (vi)    Excess/Umbrella in the amount of $5,000,000.

Any insurance provided by MRMG or any subsidiary and/or affiliate of MRMG shall be non-contributory and in excess of the insurance coverage required of the Subcontractor.

20.2  All policies of insurance required of Subcontractor under this Master Subcontract shall be obtained from reputable insurers licensed to do business in the state where the property is located and Work is to be performed and have an AM Best Strength Rating of at least A and an AM Best Financial Size Category of at least VIII. A copy of each such insurance policy or certificate required of Subcontractor under this Master Subcontract shall be deposited, upon MRMG's request, with MRMG promptly upon the commencement of the term of this Master Subcontract or anytime thereafter.

20.3  MRMG and its members, officers, employees, and agents shall not be responsible for loss of, damage to, and/or theft of Subcontractor's equipment or personal property, including, without limitation, any loss or damage related to any acts or omissions of third parties, acts of God, or structural failure of the building or property thereon. All equipment and personal property owned or leased by Subcontractor shall be kept at Subcontractor's sole risk and expense; and Subcontractor, at Subcontractor's expense, shall maintain in full force and effect throughout the term of this Master Subcontract and any extension or continuation thereof, fire and extended coverage property insurance, insuring Subcontractor's equipment and personal property located on the property or within the buildings located on the property. Subcontractor's all risk property coverage insurance shall contain a waiver of subrogation endorsement in favor of MRMG. Subcontractor hereby waives and releases any and all rights of recovery that it might have against

Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

MRMG for any loss or damage, unless attributable to the sole negligence of MRMG or MRMG's agents, to the extent such loss or damage is covered by any insurance required to be maintained by Subcontractor under this Master Subcontract.

## ARTICLE 21 – SUBCONTRACTOR'S INDEMNITY AND MRMG'S ASSUMPTION

21.1 Notwithstanding any other indemnification provided hereunder, to the fullest extent permitted by law, Subcontractor shall indemnify and save harmless MRMG, its members, officers, employees, and agents from and against all claims, damages, losses, and expenses, including, but not limited to, reasonable attorney's fees, to the extent arising out of or resulting from the performance or failure to perform the Work and the provision of materials and/or services connected therewith, provided that any such claim, damage, loss, or expense (1) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or part by any alleged or actual negligence of Subcontractor or anyone directly or indirectly employed by any of them, or anyone for whose acts any of them are liable, regardless of whether or not it is caused by the negligence of a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph. Subcontractor shall hold harmless MRMG, its members, officers, employees, and agents as well as the Owner and its members, directors, officers, employees, and agents from and indemnify it and them against all claims, liens, and/or suits for labor and material furnished by Subcontractor. Subcontractor shall defend on behalf of MRMG, its members, officers, employees, and agents as well as the Owner and its members, directors, officers, employees, and agents; any suits jointly against their members, directors, officers, employees, or any combination thereof, or against MRMG alone, or against any member, officer, employee, or agent of MRMG, for or arising out of any or all of the aforesaid causes.

Subcontractor is not responsible for damages resulting solely from MRMG's own negligence.

21.2 In any and all claims against MRMG, or any of its members, directors, officers, employees, or agents, any contractor, anyone directly or indirectly employed by any of them for whose acts any of them may be liable, however so designated, the indemnification obligation under this Article shall not be limited in any way by limitation on the amount or type of damages, compensation, or benefits payable by or for MRMG or any subcontractor under worker's compensation, disability benefits, or employee benefits acts.

21.3 Subcontractor shall defend, indemnify, and save harmless MRMG and Owner from any and all laborer's, materialmen's, and mechanic's liens upon the property and premises on which the Subcontractor Work is being performed that arises out of such Work, and shall keep the property and premises free and clear of all liens, claims,

22


Initials

DocuSign Envelope ID: B23D8295-974C-4F2D-9E63-D2EAEDA8F5F4

and encumbrances arising out of the performance of this Subcontract. Subcontractor shall defend, indemnify, and save harmless MRMG and its surety from any claims or causes of action asserted against MRMG's surety bonds issued in connection with the Work. Subcontractor shall defend, indemnify, and save harmless MRMG and Owner from any claims or suits for infringement of patents or violation of patent rights by Subcontractor. If Subcontractor fails to do any of the foregoing, MRMG may deduct from sums then or thereafter due Subcontractor, under this Master Subcontract or other agreement with MRMG, such amounts as MRMG may deem appropriate to defend, indemnify, and save harmless MRMG and Owner from such liens, claim, encumbrances, and suits.

21.4 Subcontractor agrees that ten dollars ($10.00) of the Master Subcontract Amount is paid in consideration of this indemnity provision and that this indemnity provision will survive completion, acceptance of, and final payment for the Work.

21.5 The Subcontractor shall indemnify and protect MRMG and the Owner and save them harmless from any and all loss, damage, costs, expenses, and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, or any other provisions or covenant of this Master Subcontract.

To the extent permitted by applicable law, Subcontractor agrees to look solely to its insurers, and does hereby release and waive any and all rights it may have following the execution of this Master Subcontract to recover against MRMG, its members, directors, employees, or agents (the "Releasees"), for the loss or damage to property, or personal injury, or death (including, but not limited to, claims for damages to property of Subcontractor and injury to, or death of, employees of Subcontractor and claims for contribution or indemnity or for reimbursement of worker's compensation benefits) in any way related to or resulting from the Work performed or to be performed under or in connection with this Master Subcontract, except to the extent any loss, damage, personal injury, or death is caused by Releasee's negligence. Subcontractor shall obtain from its insurers waivers to all rights of subrogation with respect to such claims against Releasees. Subcontractor reserves any rights to recover against Releasees related to only those claims which have been asserted prior to the execution of the Master Subcontract.

## ARTICLE 22 -- NON-SOLICITATION, NON-DISPARAGEMENT, AND NO COMMUNICATION WITH PROPERTY OWNER(S), PROPERTY MANAGER(S), AND LESSEE(S)

22.1 Subcontractor shall not induce, encourage, or solicit any Owner or its shareholders, partners, members, directors, employees, or agents to terminate its business relationship with MRMG during the term of this Master Subcontract and for a period of two years after the termination of this Master Subcontract or employ, solicit, retain, or offer to employ or retain any employee, agent, or representative of MRMG.

23



Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

22.2  Subcontractor agrees that it will not disparage MRMG or any of its members, employees, or agents. For purposes of this section, "disparage" shall mean any negative statement, whether written or oral, about MRMG, its members, employees, or agents, or the quality of its services, work product, or payment terms or schedule. The parties agree and acknowledge that this non-disparagement provision is a material term of this Master Subcontract, the absence of which would have resulted in MRMG refusing to enter into this Master Subcontract.

22.3  Subcontractor agrees that it will not engage in non-authorized communications with any Owner or its shareholders, partners, members, directors, employees, or agents and acknowledges that any such communication, whether written or oral, constitutes a default and may result in MRMG terminating this Master Subcontract pursuant to Article 14.

22.4  If a breach of this Article occurs, MRGM shall be entitled, in addition to liquidated damages, and any other remedies available, to a temporary restraining order, preliminary injunction, and/or permanent injunction to restrain the violation, breach, or threatened breach of any covenant in this Article by Subcontractor. The parties further agree that no bond shall be required in procuring any such restraining order or injunction. The parties further agree that MRMG shall be entitled to liquidated damages equal to the Subcontract Amount; and if payment has not been made pursuant to Article 5, MRMG's obligation to make such payment shall terminate. If payment by MRMG to the Subcontractor as been made, Subcontractor shall remit the liquidated damages within ten (10) days of written notice by MRMG of the violation of this Article.

22.5  The covenants in this Article shall not affect the provisions of any other covenant of this Master Subcontract. In the event any court of competent jurisdiction shall determine that the scope or time restrictions set forth are unreasonable, it is the intention of the parties that such restrictions be enforced to the fullest extent a court deems reasonable, and the Master Subcontract shall thereby be reformed. If any portion of this Article is deemed invalid or unenforceable, such invalidity or unenforceability shall in no way be deemed or construed to affect in any way the enforceability of any other portion of this Article or Master Subcontract.

**ARTICLE 23 -- REMEDIES**

23.1  Notwithstanding termination of this Master Subcontract, each party shall also have, and hereby reserves, the right to recover damages, including, but not limited to, consequential and incidental damages, from the other for any loss suffered as a result of any breach or default hereunder. Failure or forbearance by either party to terminate this Master Subcontract upon the occurrence of breach or violation hereof by the other or any other event of default shall not constitute a waiver of such breach, violation, or default on that occasion or upon the occurrence of a similar breach or violation upon a future occasion.

24

_____ Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA6F5F4

23.2  Liquidated damages for delay, if provided for in this Master Subcontract, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor, the Subcontractor's employees and agents, subcontractors, suppliers or any person or entity for whose acts the Subcontractor may be liable and in no case for delays or causes arising outside the scope of this Master Subcontract.

## ARTICLE 24 – REPRESENTATIVES AND NOTICES

24.1 All notices required hereunder shall be in writing and may be delivered by electronic transmission, facsimile, or by hand delivery to a superintendent or manager of MRMG or the Subcontractor, or if delivered to or sent by registered or certified mail return receipt requested, to the business addresses in the following section 24.2

24.2  Notices shall be deemed to have been given in the case of electronic transmissions or facsimile when sent, and in the case of certified or registered mail when deposited in the United States mail with postage paid.

To MRMG:    Marathon Resource Management Group, LLC
Post Office Box 112
Ashland, Virginia 23005
Fax: (804) 368-0727

support@marathonrmg.com

To Subcontractor:    CertaPro Painter of College Station
1511 Texas Ave. S. #137
College Station, TX 77840
Attn:    Cliff Cornell

Contact Number: 9792130717
Email:    collegestationoffice@certapro.com

The above addresses may be changed at any time by giving seven (7) days prior written notice.

25

**Initials**

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

## ARTICLE 25 – SUCCESSORS AND ASSIGNS

25.1  It is expressly understood that Subcontractor shall have no right, power, or authority to assign this Master Subcontract or any portion thereof, either voluntarily or by operation of law, and that Subcontractor shall not have any right, power, or authority to subcontract or delegate the Work to be performed hereunder, or any portion hereof, without MRMG's express written approval and consent. Except for the foregoing limitations, this Master Subcontract shall be binding upon and inure to the benefit of the parties and their successors and assigns. Without limiting the generality of the foregoing. MRMG shall have the right to assign this Master Subcontract in connection with any sale, transfer, or hypothecation of the property where the Work is to be performed.

## ARTICLE 26 – TIME

26.1  All time limits provided in this Master Subcontract, Work Order, Exhibit(s), or approved change orders hereto are of the essence of this Master Subcontract, incorporated herein by reference.

## ARTICLE 27 – OTHER CONTRACTORS/SUBCONTRACTORS

27.1  Nothing in this Master Subcontract shall be deemed as a limitation on MRMG's right to engage other contractors or subcontractors, however so designated, not a party hereto (hereinafter "third parties") to perform work related to the property. Upon request by MRMG, Subcontractor shall coordinate the Work hereunder and cooperate with the work performed by other such third parties.

## ARTICLE 28 – DISPUTE RESOLUTION

28.1  Should a dispute arise relating to any term or condition of the Master Subcontract, MRMG can elect, at its sole discretion, to engage in mediation, engage in arbitration according to the rules of the American Arbitration Association, or pursue resolution in the County of Hanover, Virginia Circuit or General District Court.  MRMG will make such decision in writing within ten (10) days of notice of any dispute by the Subcontractor.

28.2  Should MRMG employ an attorney to institute suit, demand mediation, or demand arbitration to enforce any of the provisions hereof, to protect any interest in materials arising under this Master Subcontract, to defend against any suit or other claim brought by Subcontractor or its sub-subcontractors or suppliers, or to collect damages for any breach of the Master Subcontract, MRMG will be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein. Reasonable attorney's fees are defined as the greater of 1) 1/3 of the principle amount due or 2) the customary hourly charges of MRMG's attorney(s).

26



Initials

DocuSign Envelope ID: 823D82E5-974C-4F2D-9E63-D2EAEDA8F5F4

28.3  Regardless of the type of dispute resolution elected by MRMG (whether mediation, arbitration, or litigation), any such proceeding will be held in the City of Richmond, Virginia unless otherwise agreed upon by the parties.  Additionally, the parties hereby agree that exclusive jurisdiction of any dispute arising from this Master Subcontract or the prosecution of the Work will be found in the Commonwealth of Virginia.

## ARTICLE 29 – WAIVER

29.1  Any failure of Subcontractor or its insurer to comply in full with any of the provisions of this Master Subcontract and any failure by MRMG to enforce the provisions of this Master Subcontract, shall in no way constitute a waiver by MRMG of any contractual right hereunder, unless such waiver is in writing signed by an authorized designee or agent of MRMG.

## ARTICLE 30 – CHOICE OF LAW/ VENUE

30.1  The validity, construction, interpretation, performance, and jurisdictional venue pertaining to this Master Subcontract shall be governed and construed in accordance with the laws of the Commonwealth of Virginia.

## ARTICLE 31 – VOID, VOIDABLE

31.1  In the event that any provision of this Master Subcontract shall be held to be void, voidable, or unenforceable, the remaining portions hereof shall remain in full force and effect.

## ARTICLE 32 – LIMITATION OF LIABILITY

32.1  No individual or member of MRMG nor any officer, employee, agent, or representative of the same shall have any personal liability in connection with this Master Subcontract.

## ARTICLE 33 – INTEGRATION

33.1  This Master Subcontract, together with any Exhibit(s), Work Order, and Change Order(s), constitutes the entire Master Subcontract between the parties and supersedes all previous written or oral agreements, if any, relative to the subject matter hereof. In the event of any inconsistency between this Master Subcontract and the Exhibit(s), this Master Subcontract shall control. In the event of inconsistency among Exhibits, the more detailed Exhibit(s) shall control. In the event of inconsistency between the Work Order and Change Orders, the Change Order shall control.  In the event of inconsistency among Change Orders, the most recent Change Order shall control. In no event shall any proposal or contract form submitted by Subcontractor be part of this Master Subcontract unless attached and referred to herein as an Exhibit(s), and in such event, only the portions of such

27


Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

proposal or contract form consistent with this Master Subcontract and Exhibit(s) hereto shall be a part hereof. All Article headings utilized in this Master Subcontract are for the convenience of the parties only and are in no way to be considered a part of this Master Subcontract.

## ARTICLE 34 – SURVIVAL

34.1  Except as expressly provided to the contrary herein, all provisions of this Master Subcontract shall survive all performances hereunder.

## ARTICLE 35 – ADDITIONAL TERMS, CONDITIONS

{REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.}
{SIGNATURE PAGES FOLLOW}

28



_____ Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

IN WITNESS WHEREOF, the parties have executed this Master Subcontract by their duly authorized representatives in one or more counterparts, each of which shall constitute an original, on the dates set forth below.

MARATHON RESOURCE MANAGEMENT GROUP, LLC

Signed Name: _____

Printed Name: ___ Jeff Rambatrell ___

Title: __ Vice President ___

Date: __ 9/23/17 ___

CertaPro Painter of College Station
_____
SUBCONTRACTOR
/ COMPANY NAME

Signed Name: ___ Cliff Cornell ___
                  5937B9E97AC3458...

Printed Name: ___ Cliff Cornell ___

Title: __ Owner ___

Date: __ 9/22/2017 ___

29

Initials

DocuSign Envelope ID: 823D8295-974C-4F2D-9E63-D2EAEDA8F5F4

# EXHIBIT A

## Subcontractor's Certificate of Insurance

30

Initials

DocuSign Envelope ID: 823D8285-974C-4F2D-9E63-D2EAEDA8F5F4

**EXHIBIT B**

**W-9**

31

Initials

Received & Filed 1/30/2018 9:47 AM
Marc Hamlin, District Clerk
Brazos County, Texas
Kristin Emert
Envelope# - 22152334

CAUSE NO. 17-003212-CV-272

| | | |
|---|---|---|
| C. CORNELL, INC. D/B/A | § | IN THE DISTRICT COURT OF |
| CERTA PRO PAINTERS OF COLLEGE | § | |
| STATION | § | |
| | § | |
| V. | § | |
| | § | BRAZOS COUNTY, TEXAS |
| MARATHON RESOURCE | § | |
| MANAGEMENT GROUP, LLC | § | 272ND JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW C. CORNELL, INC., D/B/A CERTA PRO PAINTERS OF COLLEGE

STATION, (hereinafter referred to as CERTA PRO), and files this First Amended Original

Petition complaining MARATHON RESOURCE MANAGEMENT GROUP, LLC, (hereinafter

referred to as MARATHON), and for cause of action would respectfully show this Honorable

Court the following:

I.

## DISCOVERY CONTROL PLAN AND RULE 47 STATEMENT

Pursuant to Rule 190.1, T.R.C.P., Plaintiff alleges that discovery of this case is

intended to be conducted under Level 3.

For purposes of Rule 47 of the Texas Rules of Civil Procedure, Plaintiff would note

that Plaintiff seeks monetary damages of less than $75,0000 exclusive of interest and

costs.

**PLAINTIFF'S**

**EXHIBIT**

**B**

II.

## PARTIES

Plaintiff C. CORNELL, INC. D/B/A CERTA PRO PAINTERS OF COLLEGE STATION is a corporation doing business as Certa Pro Painters of College Station.

MARATHON RESOURCE MANAGEMENT GROUP, LLC is a Virginia corporation doing business in the State of Texas at the time of the facts made the basis of this suit and at the present time. Said Defendant does not maintain a registered agent for service in the State of Texas. Defendant MARATHON RESOURCE MANAGEMENT GROUP, LLC may be served with citation by and through its Registered Agent, Schooley Law Firm, PC, 3901 Westerre Parkway, Suite 230, Richmond, Virginia 23233, by mailing duplicate copies of the citation and of this Petition to the Rolando B. Pablos, Texas Secretary of State, P.O. Box 12887, 1019 Brazos Street, Earl Rutter Bldg., Room 220, Austin, TX 78711-2887, via registered or certified mail, return receipt requested, with directions that the Secretary of State immediately forward via registered or certified mail, return receipt requested, one of the copies of the citation and of this Petition to MARATHON RESOURCE MANAGEMENT GROUP, LLC by and through its Registered Agent, Schooley Law Firm, PC, 3901 Westerre Parkway, Suite 230, Richmond, Virginia 23233.

III.

## VENUE

Venue is proper in the county in which this lawsuit has been filed on the grounds that at all times material to this lawsuit and to the filing of this lawsuit, all or a substantial part of the events or omissions giving rise to the claim occurred in Brazos County, Texas, including payment of the consideration to CERTA PRO.

The amount in controversy (less than $75,000.00) exceeds the minimum jurisdictional limits of this Court, but does not exceed the maximum jurisdictional limits of the County Court at Law of Brazos County, Texas.

IV.

FACTS

On or about May 19, 2017, a representative of MARATHON discussed with the owner of CERTA PRO a contract for painting rooms in the Marc Apartments located in College Station, Brazos County, Texas. The painting agreement with the scope of work and pricing was executed by Cliffton C. Cornell for CERTA PRO on May 24, 2017. A true copy of the painting agreement is attached as Exhibit "A."

On August 2, 2017, Cliffton C. Cornell executed a cleaning agreement for the same apartment complex in College Station, Brazos County, Texas. The cleaning agreement is attached as Exhibit "B."

After the scope of the work provided in the painting agreement was completed and accepted by MARATHON and the owner, CERTA PRO submitted an invoice on August 22, 2017, in the amount of $29,578.00. A true copy of the painting invoice is attached as Exhibit "C."

After the scope of the work provided in the cleaning agreement was completed and accepted by MARATHON and the owner, CERTA PRO submitted an invoice on September 11, 2017, in the amount of $11,280.00. A true copy of the cleaning invoice is attached as Exhibit "D."

MARATHON approved the two (2) invoices and issued a purchase order number for payment. The owner of the Marc Apartments made payment in full to its general

contractor, MARATHON, on or about November 8, 2017. As of this the date of the filing of this Petition, MARATHON has failed and refused to pay the amount due and owing for the painting invoice and the cleaning invoice.

V.

## BREACH OF CONTRACT

MARATHON has breached the agreements of the parties by failing to timely pay the agreed considerations for the labor provided to the project under the painting agreement and the cleaning agreement. As a result of the breach, CERTA PRO is entitled to recover $40,263.00.

VI.

## PROMPT PAYMENT ACT

Texas Property Code Section 28.001

MARATHON received payment from the owner or a person authorized to act on behalf of the owner of the Marc Apartments on or about November 8, 2017. Pursuant to Section 28.002(b) of the Texas Property Code, MARATHON was required to make payment of $40,263.00 to CERTA PRO no later than seven (7) days after receipt of the owner's payment. As a result of MARATHON's failure and refusal to pay the agreed consideration, CERTA PRO is entitled to recover the unpaid amount of $40,263.00, together with interest of one and one-half (1-½) percent per month from the date the payment became due (i.e. on or about November 15, 2017) pursuant to Section 28.004 of the Texas Property Code.

VII.

## ATTORNEY'S FEES

Pursuant to Chapter 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE and Section 28.005 of the Texas Property Code, CERTA PRO is entitled to recover reasonable attorney's fees.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff C. CORNELL, INC., D/B/A CERTA PRO PAINTERS OF COLLEGE STATION requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment for a sum of $40,263.00, with prejudgment interest at the highest legal rate, interest after judgment at the highest legal rate until paid, reasonable attorney's fees, costs of suit, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

DAVIS & DAVIS
2900 Trophy Drive
P.O. Box 3610
Bryan, Texas 77805-3610
Telephone (979) 776-9551
Facsimile (979) 776-2712
ATTORNEYS FOR PLAINTIFF

BY: _____
WILLIAM STEVEN STEELE
State Bar No.19104700
ssteele@davisdavislaw.com

PAGE 5 OF 5

CAUSE NO. 17-003212-CV-272

RECEIVED AND FILED
At _____ o'clock ___ M

MAR 2 2 2018

| | | |
|---|---|---|
| C. CORNELL, INC. D/B/A CERTA PRO PAINTERS OF COLLEGE STATION | §<br>§<br>§<br>§ | IN THE DISTRICT COURT, Brazos County, Texas<br>MARC HAMLIN DIST. CLERK<br>By _____ Deputy |
| V. | § | BRAZOS COUNTY, TEXAS |
| MARATHON RESOURCE MANAGEMENT GROUP, LLC | §<br>§ | 272ND JUDICIAL DISTRICT |

## DEFAULT JUDGMENT

On March 22, 2018, came on to be heard the oral Motion of C. CORNELL, INC., D/B/A CERTA PRO PAINTERS OF COLLEGE STATION for entry of Default Judgment against Defendant, MARATHON RESOURCE MANAGEMENT GROUP, LLC. The Court finds that Defendant was served through the Texas Secretary of State by forwarding the citation and Petition to Defendant's registered agent for service Schooley Law Firm, PC, 3901 Westerre Parkway, Suite 230, Richmond, Virginia 23233, by certified mail, return, receipt, requested. The service was perfected on February 15, 2018, by delivery to Defendant's registered agent according to the Certificate of Service from the Secretary of State filed with this Court on February 26, 2018.

The Court finds that Defendant has not appeared or answered with respect to this matter within the time permitted by law and is wholly in default.

The Certificate of the Secretary of State showing proper delivery of the Citation has been on file with the District Clerk of Brazos County for more than ten (10) days. Therefore, the Court finds that pursuant to Rule 239 of the Texas Rules of Civil Procedure, Plaintiff is entitled to this Default Judgment.

PLAINTIFF'S
EXHIBIT
C

PAGE 1 OF 2

After hearing evidence on the damages in accordance with Rule 243 of the Texas Rules of Civil Procedure the Court finds that Plaintiff is entitled to the damages awarded herein.

The Court finds that Defendant failed to promptly pay Plaintiff as required by Chapter 28 of the Texas Property Code. As a result of such failure, Plaintiff is entitled to recover prejudgment interest on the unpaid amount of FORTY THOUSAND TWO HUNDRED SIXTY-THREE AND NO/100 DOLLARS ($40,263.00) at the rate of 1-1/2% each month from November 15, 2017, until March 22, 2018, pursuant to Section 28.004 of the Texas Property Code.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff, C. CORNELL, INC., D/B/A CERTA PRO PAINTERS OF COLLEGE STATION have and recover from Defendant, MARATHON RESOURCE MANAGEMENT GROUP, LLC. the sum of FORTY THOUSAND TWO HUNDRED SIXTY-THREE AND NO/100 DOLLARS ($40,263.00) for the breach of contract claim, together with pre-judgment interest at the rate of 1-1/2 percent per month from November 15, 2017, until the date of this Judgment (total of $2,576.82); reasonable attorney's fees of $ 15,000 ⁰⁰  ; costs of suit; and post-judgment interest on the total judgment at the legal rate on the full amount of this Judgment from the date of this Judgment until fully paid. All for which let execution and legal process issue.

SIGNED this the 22nd day of March, 2018.

_____
TRAVIS B. BRYAN, III
JUDGE PRESIDING

PAGE 2 OF 2

### THE STATE OF TEXAS
#### WRIT OF GARNISHMENT AFTER JUDGMENT

#### CAUSE NO. 18-002192-CV-272

**TO:   CLS, INC., c/o Santiago Quiroz, 7500 Rialto Blvd., Building 2, Suite 290, Austin, Texas 78735
GARNISHEE**

Whereas, in the of Brazos County, Texas, in a certain cause, numbered 17-003212-CV-272, wherein is
**C. CORNELL, INC D/B/A CERTA PRO PAINTERS OF COLLEGE STATION** Plaintiff and is
**MARATHON RESOURCE MANAGEMENT GROUP, LLC** defendant,  the said Plaintiff(s) secured
a judgment in this Court against   hereafter called defendant,  in the sum of $40,263.00 for the breach of
contract claim, together with pre-judgment interest at the rate of 1-1/2 percent per month from November 15,
2017, until the date of this judgment (total of $2,576.82); reasonable attorney's fee of $15,000.00; costs of suit
and post-judgment interest on the total judgment at the legal rate on the full amount of this Judgment from
the date of this judgment until fully paid.

Whereas the Plaintiff in the above numbered 18-002192-CV-272 and entitled cause has applied for a writ of
garnishment against you, CLS, INC. hereafter called Garnishee, said cause being numbered  on the docket of the
court and being entitled .

**THEREFORE  YOU ARE HEREBY COMMANDED** to file a sworn written answer  on or before ten
o'clock AM, on the Monday next following the  expiration  of twenty days from the date of service
hereof, then  and  there to answer upon oath:

1. What, if anything, you are indebted to the above named
   defendant and were when this writ was served upon you.
2. What effects,  if any, of the above named defendant you
   had in your possession when this Writ was served
   or you have received prior to the answer date.
3. What other persons, if any, within your knowledge,
   are indebted to the above named defendant, or have
   effects  belonging to  said  defendant  in  their
   possession.

**YOU ARE FURTHER COMMANDED NOT** to pay to the defendant any debt  or  to deliver to him
any effects pending further order  of this court.

**HEREIN FAIL NOT**, but make due answer as the law directs.

The officer executing this writ shall promptly serve the same according to requirements of law, and the
mandates hereof, and make due return as the law directs.  If this writ is not served within ninety days after
the date of its issuance, it shall be returned unserved.

Issued and given under my hand and seal of said, 31st day of August 2018.

Marc Hamlin,
District Clerk Brazos County, Texas

By _Kayle Johnson_ Deputy

```
PLAINTIFF'S

EXHIBIT

D
```

Received & Filed 8/28/2018 2:29 PM
Marc Hamlin, District Clerk
Brazos County, Texas
Jeri Alexander
Envelope# - 27104700

CAUSE NO. _____
18-002192-CV-272

| | | |
|---|---|---|
| C. CORNELL, INC. D/B/A | § | IN THE DISTRICT COURT OF |
| CERTA PRO PAINTERS OF COLLEGE | § | |
| STATION, Garnishor/Judgment Collector | § | |
| | § | |
| V. | § | BRAZOS COUNTY, TEXAS |
| | § | |
| CLS, INC. | § | |
| Garnishee and | § | |
| | § | |
| MARATHON RESOURCE | § | |
| MANAGEMENT GROUP, LLC, | § | |
| Defendant/Judgment Debtor | § | 272ND JUDICIAL DISTRICT |

CAUSE NO. 17-003212-CV-272

| | | |
|---|---|---|
| C. CORNELL, INC. D/B/A | § | IN THE DISTRICT COURT OF |
| CERTA PRO PAINTERS OF COLLEGE | § | |
| STATION | § | |
| | § | |
| V. | § | BRAZOS COUNTY, TEXAS |
| | § | |
| MARATHON RESOURCE | § | |
| MANAGEMENT GROUP, LLC | § | 272ND JUDICIAL DISTRICT |

## APPLICATION FOR WRIT OF GARNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

1.    The Applicant is C. CORNELL, INC., D/B/A CERTA PRO PAINTERS OF COLLEGE

STATION, (herein Garnishor/Judgment Creditor) in Cause Number 17-003212-CV-

272, styled *C. Cornell, Inc. D/B/A Certa Pro Painters of College Station v. Marathon*

*Resource Management Group, LLC*, in the 272nd Judicial District Court of Brazos

County, Texas.

2.    The Garnishee is CLS, INC., a corporation organized under the laws of the State of

Texas. Service of the writ of garnishment may be made on SANTIAGO QUIROZ,

7500 Rialto Boulevard, Building 2, Suite 290, Austin, Texas 78735 by certified mail, return receipt requested, and by email.

3. Applicant sued MARATHON RESOURCE MANAGEMENT GROUP, LLC in Cause Number 17-003212-CV-272, styled *C. Cornell, Inc. D/B/A Certa Pro Painters of College Station v. Marathon Resource Management Group, LLC*, in the 272nd Judicial District Court of Brazos County, Texas, for breach of contract claim. Applicant was awarded a Default Judgment against MARATHON RESOURCE MANAGEMENT GROUP, LLC dated March 22, 2018, in the amount of FORTY THOUSAND TWO HUNDRED SIXTY-THREE AND NO/100 DOLLARS ($40,263.00) with pre-judgment interest at the rate of 1-1/2 percent per month from November 15, 2017, until the date of the Judgment (total of $2,576.82); reasonable attorney's fees of $15,000.00; post-judgment interest on the total Judgment at the legal rate on the full amount of this Judgment from the date of this Judgment until fully paid and costs of court. The Judgment is valid. As of the date of the filing of this application, the total of the Judgment due is $57,833.82, together with Court costs of $398.09 and post-judgment interest of $7.32 per day.

4. The entirety of the Judgment is uncollected, unpaid and unsatisfied. MARATHON RESOURCE MANAGEMENT GROUP, LLC does not have in its possession in this State property subject to execution sufficient to satisfy the Judgment. A true and correct copy of the Judgment is attached as Exhibit A and incorporated by reference.

5.  This writ of garnishment is not sought to injure either the Defendant or the Garnishee.

6.  Garnishor/Judgment Creditor has reason to and does believe that Garnishee is indebted to Defendant/Judgment Debtor as a result of a contract to labor on an apartment complex in College Station, Brazos County, Texas.

7.  Garnishor/Judgment Creditor requests that the Court issue a writ of garnishment against the Garnishee, that a copy be delivered to the Defendant, and for further proceeding thereon as provided by law.

8.  Garnishor/Judgment Creditor is entitled to the issuance of a writ of garnishment on the grounds stated in the attached Verification, which is incorporated by reference.

PRAYER

Garnishor/Judgment Creditor prays for the following:

1.  A writ of garnishment be issued and directed to Garnishee CLS, INC., a corporation organized under the laws of the State of Texas.

2.  Garnishor/Judgment Creditor be granted Judgment against Garnishee for the amount of the indebtedness owed to Defendant/Judgment Debtor not to exceed the total amount of the Judgment rendered against Defendant/ Judgment Debtor MARATHON RESOURCE MANAGEMENT GROUP, LLC, which included pre-judgment and post-judgment interest to date and costs of the suit specifically stated in the Judgment.

3.  Garnishor/Judgment Creditor be granted such other relief to which it may be justly entitled.

Respectfully submitted,

DAVIS & DAVIS
2900 Trophy Drive
P.O. Box 3610
Bryan, Texas 77805-3610
Telephone (979) 776-9551
Facsimile (979) 776-2712
ATTORNEYS FOR GARNISHOR/JUDGMENT
CREDITOR

BY: _____
WILLIAM STEVEN STEELE
State Bar No.19104700
ssteele@davisdavislaw.com