IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARATHON RESOURCE
MANAGEMENT GROUP, LLC,

    Plaintiff,

v.                                                         Civil Action No. 3:19cv89

C. CORNELL, INC. D/B/A CERTA
PRO PAINTERS COLLEGE STATION,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Marathon Resource Management Group, LLC's ("Marathon") Motion to Remand. (ECF No. 6.) Marathon seeks remand of this case to the Circuit Court for the City of Richmond (the "Richmond Circuit Court"). Defendant C. Cornell, Inc. d/b/a CertaPro Painters of College Station ("CCI") opposed the remand. (ECF No. 7.) Marathon filed a Reply. (ECF No. 10.) The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.[1] The matter is ripe for disposition.

---

[1] Marathon also filed a Motion for Hearing. (ECF No. 9.) CCI did not respond. The time to do so has expired. Because the briefing on the Motion to Remand adequately presents the facts and legal contentions, the Court will deny the Motion for Hearing.

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[2] For the reasons that follow, the Court will deny the Motion to Remand.[3]

## I. Procedural and Factual Background

Central to the dispute lies a choice-of-law provision in a contract between Marathon and CCI. To understand the dispute, the Court offers a summary of the case at bar and of prior relevant dealings between the Parties.

### A. Underlying Texas Litigation

The current litigation arises from a default judgment that CCI obtained against Marathon in the District Court of Brazos County, Texas (the "Texas court" or the "Texas state court"). In the Texas suit, CCI alleged that in May 2017, Marathon and CCI entered into two separate contracts for CCI to paint and clean rooms in a building located in College Station, Texas. (CCI 1st Am. Pet. 3, ECF No. 1–2 Ex. B.) CCI completed the work and submitted two invoices to Marathon: on August 22, 2017, CCI sent Marathon an invoice for $29,578.00 for the painting services; and, on September 11, 2017, CCI sent an invoice for $11,280.00 for the cleaning services. (*Id.*) Marathon did not pay the invoices. (*Id.* 4.) CCI filed a breach of contract suit in the Texas state court.

Marathon did not make an appearance in the Texas court or otherwise respond to the allegations against it. (Default J. 1, ECF No. 1–2 Ex. C.) In March 2018, after holding a hearing

---

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Marathon is a citizen of Virginia, CCI is a citizen of Texas, and the Complaint alleges damages exceeding $75,000.

[3] Because CCI properly removed this case, the Court also will deny Plaintiffs' request for attorneys' fees for improper removal.

2

on the matter, the Texas court entered a default judgment against Marathon. The Texas court found that Marathon "failed to promptly pay [CCI] as required" by Texas law and awarded CCI $40,263.00 in damages.[4] (Default J. 1–2.)

### B. Current Virginia Court Litigation

Marathon brings a breach of contract suit against CCI based on CCI's alleged violation of a "Master Subcontract Agreement" (the "MSA"). According to Marathon, it sent the MSA to CCI on September 22, 2017—well after CCI performed and billed for its painting and cleaning services.[5] (Mot. Remand ¶ 6.) Marathon contends that CCI signed the MSA on the same day.[6] (Mot. Remand ¶ 9.)

---

[4] Based on this default judgment, CCI sought to recover damages from Marathon through a garnishment proceeding in the Richmond Circuit Court, which still pends separately from the instant suit. (ECF No. 10-1.) Marathon argues that CCI's removal requires Marathon to "engage the defendant in two separate courts for no reason other than the defendants' preference." (Mot. Remand ¶ 18.) This simply does not affect removal jurisdiction, as this Court acquired jurisdiction of the action pursuant to 28 U.S.C. § 1441(a) once Marathon filed its Notice of Removal.

[5] Nothing in the MSA supports the unusual position that its terms would apply to services completed before execution of the MSA. To the extent Marathon argues that the MSA applies to any litigation brought after its execution, regardless of the basis for that litigation, it fails to provide legal footing for that novel argument.

[6] Central to the ultimate resolution of the case, CCI disputes the authenticity of the MSA. CCI's President and Director, Cliffton C. Cornell, whose signature and initials seem to appear on the MSA, submitted an affidavit swearing he never received the MSA and never signed it. (Cornell Affidavit 3, ECF No. 1-3.) He states: "There are no other CCI employees or agents who could have signed or docusigned the MSA other than me." (*Id.*) In response, Marathon avers: "[t]he defendant has made no clear assertion of fact or law as to why the assertion that he did not sign this agreement should be given any more weight than any other's [sic] defendant's claim of 'I did not do it.'" (Mot. Remand ¶ 16.)
The Court, however, need not resolve this factual dispute to decide the threshold question of remand because the Court retains jurisdiction regardless. Should the Court ultimately find the MSA inapplicable, then no contractually specified choice-of-forum language would apply and CCI will have met the statutory requirements to remove the case. If the MSA ultimately governs, removal is proper because, for the reasons discussed below, the purported choice-of-forum language in the MSA does not preclude this Court from hearing the case.

3

The parties declined to provide insight, or even mention, two critical sections of the MSA that speak to forum selection. Because the Court finds these sections more pertinent to forum selection than those briefed by the parties, they will be discussed first. The parties do not mention Section 28 in their briefings, although Marathon discusses Section 28.3 in its Complaint filed in the Richmond Circuit Court. (Compl. ¶ 8, ECF No. 1-1.) Two provisions contained in Section 28, entitled "Dispute Resolution," address venue. (MSA § 28.) First, Section 28.1 provides that if a dispute arises relating to any term or condition of the MSA, Marathon "can elect, at its own discretion, to engage in mediation, engage in arbitration . . . or pursue resolution in the County of Hanover, Virginia Circuit or General District Court." (MSA § 28.1.) Second, Section 28.3 states: "the parties hereby agree that exclusive jurisdiction of any dispute arising from this Master Subcontract or the prosecution of the Work will be found in the Commonwealth of Virginia." (*Id.*) Section 28.3 also provides that any proceeding that Marathon initiates "will be held in the City of Richmond, Virginia unless otherwise agreed upon by the parties." (*Id.*) Thus, Section 28.1 allows Marathon to bring suit in the County of Hanover, Virginia, while Section 28.3 confusingly requires Marathon to seek relief of any kind in Richmond, Virginia.

Rather than speak to the MSA provisions addressing the potential conflict between the provisions, the Parties argue that Section 30—the "Choice-of-law/Forum" provision—should guide this Court's analysis. The "Choice-of-law/Forum" provision reads in full: "The validity, construction, interpretation, performance, and jurisdictional venue pertaining to this Master Subcontract shall be governed and construed in accordance with the laws of Virginia." (Mot. Remand ¶ 6–11; Reply at 3; Notice Removal Ex. A "MSA" § 30, ECF. 1–2.) According to Marathon, this provision binds the Parties to dispute claims exclusively in Virginia state courts, meaning CCI violated the terms of the MSA when it filed suit in the Texas court, rather than in

Virginia. (Compl. ¶¶ 18–22, ECF No. 1-2 Ex. B.) This forms the basis of Count I of Marathon's Complaint.[7] The Court now turns to this argument.

### C. Procedural Background and Removal to This Court

Marathon filed this breach of contract suit against CCI in the Richmond Circuit Court, bringing two claims against CCI for alleged violations of the MSA and seeking $115,236.00 in damages, plus interest, attorney's fees, and costs. (Notice Removal ¶ 1, ECF No. 1; Compl. ¶ 3.) CCI specially appeared in the Richmond Circuit Court and filed a Motion to Dismiss for Lack of Personal Jurisdiction.[8] (ECF No. 1 Ex. C.) CCI then timely removed the action from the Richmond Circuit Court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). (Notice Removal ¶¶ 5–8.)

Marathon petitions this Court to remand the case to the Richmond Circuit Court for improper venue. (Mot. Remand ¶¶ 11–13.) Marathon argues that the "Choice-of-law/Forum" provision of the MSA precludes CCI from removing the case to this federal court. In opposition, CCI raises two arguments: (1) it did not sign the MSA; and, (2) even assuming the validity of the MSA, the provision is a choice-of-law, not a forum selection clause. (Resp. Mot.

---

[7] In Count II, Marathon claims CCI breached the MSA by engaging in non-authorized communication with Marathon's customer. (Compl. ¶ 24.) Marathon contends that CCI's contact with Marathon's customer caused damage to Marathon's reputation, constituting a material breach of contract. (Compl. ¶¶ 27–28.) The Court need not address Count II for purposes of the Motion to Remand.

[8] In this Court, CCI filed a Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 4.) CCI does not cite to any authority or rule allowing it to file a motion in a state court but a supportive brief in a federal court. The Court will not allow it, and will dismiss the motion without prejudice. Any motion or responsive pleadings shall be filed in accordance with the federal and local rules.

Remand. 2.) CCI contends that, considering Marathon "expressly concedes" the existence of diversity jurisdiction, the Court should deny the Motion for Remand. (*Id.*)

## II. Legal Standard for Removal and Remand

Under 28 U.S.C. § 1441(a),[9] a defendant may remove a civil action to a federal district court if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). Section 1446 delineates the procedure for removal, including the requirement that the defendant file a notice of removal in the federal district court and the state court. *See* 28 U.S.C. §§ 1446(a), (d). The state court loses jurisdiction upon the removal of an action to federal court. 28 U.S.C. § 1446(d) ("[T]he State court shall proceed no further unless and until the case is remanded."). The removability of a case "depends upon the state of the pleadings and the record at the time of the application for removal . . . ." *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("the right to remove . . . [is] determined according to the plaintiffs' pleading at the time of the petition for removal.").

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v.*

---

[9] Section 1441(a) provides, in pertinent part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

6

*City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). In deference to federalism concerns, courts must construe removal jurisdiction strictly. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different states." 28 U.S.C. § 1332(a)(1). When diversity of citizenship provides the grounds for removal, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy. . . ." 28 U.S.C. § 1446(c)(2).

An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). The standard for awarding fees is reasonableness of the removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Courts may award attorney fees under § 1447(c) only "where the removing party lacked an objectively reasonable basis for removal." *Id.*

### III. Analysis

#### A. This Action Satisfies the Requirements of Diversity Jurisdiction

Because this action satisfies the requirements of diversity jurisdiction, removal is proper pursuant to 28 U.S.C. § 1441(a). In its Complaint, Marathon—a Virginia citizen—expressly states that it brings suit against CCI, a foreign corporation with its principle place of business in College Station, Texas. (Compl. ¶ 34.) CCI also notes that the amount in controversy is satisfied. (*Id.* 1 (Marathon "hereby moves this court for judgment . . . in the amount of . . . $115,263.00.").) Because the Parties correctly agree that complete diversity exists and the amount in controversy exceeds $75,000, the Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(1), and removal jurisdiction under 28 U.S.C. § 1441(a).

## B. The MSA Does Not Preclude Removal

The parties disagree, however, over the effect the MSA has on CCI's ability to remove this case. For the purposes of the Motion to Remand only, the Court assumes without deciding that the MSA constitutes a validly executed contract applicable to the dispute at bar. After reviewing both the MSA's "Dispute Resolution" provisions and its "Choice-of-law/Venue" provision, the Court finds that the MSA does not preclude removal. CCI properly removed the case to this Court.

Because the Court concludes that the MSA's "Choice-of-law/Venue" provision does not function as a forum selection clause, the Court first turns to the function of forum selection clauses in federal courts.

### 1. Legal Standard

Forum selection clauses name a specific court or courts upon which they purport to confer jurisdiction. *See, e.g., Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 53 (2013) (holding that the following provision represents a forum selection clause: "[Disputes] shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division.").

When parties to a contract confer jurisdiction and venue on a particular court, federal courts should enforce the agreement absent a showing that enforcement would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Accordingly, the party "defying the forum selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63.

"The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." *Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) (citing Fed. R. Civ. P. 12(b)(3); 28 U.S.C. §§ 1391, 1406(a).) Therefore, a federal court "interpreting a forum selection clause must apply federal law in doing so." *Id.*

### 2. The MSA "Dispute Resolution" Provisions in Article 28 Do Not Limit or Preclude Removal[10]

Two provisions of the MSA are in play here. Section 28.1 states that if a dispute arises relating to any term or condition of the MSA, Marathon can "elect, at its sole discretion, to engage in mediation, engage in arbitration . . . or pursue resolution in the County of Hanover, Virginia Circuit or General District Court." (MSA § 28.1.) Seemingly in contrast, Section 28.3 of the MSA provides that any proceeding that Marathon initiates "will be held in the City of Richmond, Virginia unless otherwise agreed upon by the parties." (MSA § 28.3.)

When construing forum selection clauses, federal courts look to whether the provision conferring jurisdiction on one forum affirmatively excludes other forums. *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (explaining that a forum selection clause providing that "either party *shall be free* to pursue its rights at law or equity in a court of competent jurisdiction in Fairfax County, Virginia" was permissive and did not prevent parties from filing suit in a different court (emphasis added)). Generally, "an agreement conferring jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *Id.* (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (emphasis in original) (internal quotations omitted)).

---

[10] Because the Section 28 "Dispute Resolution" clauses appear most relevant to the jurisdictional dispute, the Court evaluates those provisions first.

As to Section 28.1, the provision states that Marathon can "elect" to bring suit in the County of Hanover, Virginia Circuit or General District Court.[11] (MSA § 28.1.) The plain language of the provision does not exclude other venues, rendering it a permissive forum selection clause. *IntraComm*, 492 F.3d at 290. The existence of Section 28.3 bolsters this conclusion, as the two provisions appear to contradict each other if deemed mandatory.[12]

In contrast, Section 28.3 provides that any litigation "*will* be held in the City of Richmond."[13] (MSA § 28.3.) Unlike Section 28.1, the language of Section 28.3 is not permissive. It requires any dispute arising out of the Contract be held in a certain location "unless otherwise agreed upon by the parties." (*Id.*) While mandatory, however, Section 28.3 does not limit jurisdiction to Virginia state courts, but only to a certain geographic location: the

---

[11] Section 28.1 reads in full:

> Should a dispute arise relating to any term or condition of the Master Subcontract, [Marathon] can elect, at its sole discretion, to engage in mediation, engage in arbitration according to the rules of the American Arbitration Association, or pursue resolution in the County of Hanover, Virginia Circuit or General District Court. [Marathon] will make such decision in writing within ten (10) days of notice of any dispute by the [CCI].

(MSA § 28.1.)

[12] While Section 28.1 allows litigation to proceed in Hanover County, Section 28.3 states that any dispute resolution, including litigation, will occur in Richmond, Virginia. To interpret Section 28.1 as exclusive would render Section 28.3 meaningless, and vice versa.

[13] Section 28.3 reads in full:

> Regardless of the type of dispute resolution elected by [Marathon] (whether mediation, arbitration, or litigation), any such proceeding *will* be held in the City of Richmond, Virginia unless otherwise agreed upon by the parties. Additionally, the parties hereby agree that exclusive jurisdiction of any dispute arising out of this Master Subcontract or the prosecution of the Work *will* be found in the Commonwealth of Virginia.

(MSA § 28.3) (emphasis added).

City of Richmond, Virginia. Because this federal Court sits in Richmond, Virginia, the plain language of the MSA allows suit here. Finally, nothing in the MSA appears to limit CCI's ability to remove the case to this Court.[14]

Assuming—for the purposes of this Motion to Remand only—that the MSA governs, nothing in Section 28 prohibits this Court's jurisdiction. Because this Court lies within the permissible forum agreed to by both parties, CCI need not show that the forum selection clause yields an "unreasonable or unjust" result in order for removal to be deemed proper. *Bremen*, 407 U.S. at 15.

### 3. The MSA "Choice-of-law/Venue" Provision Does Not Limit Venue to State Courts

Even were the Court to rely solely on Section 30's choice-of-law provision, Marathon's claim that the MSA provision is both a forum selection clause and a choice-of-law provision cannot prevail. Because Section 30 states only that the agreement be "construed in accordance with the laws of the Commonwealth of Virginia," and does not specify which courts may apply those laws, it functions solely as a choice-of-law provision.

The provision reads in full: "The validity, construction, interpretation, performance, and jurisdictional venue pertaining to this Master Subcontract shall be governed and construed in accordance with the laws of the Commonwealth of Virginia." (Mot. Remand ¶ 11, ECF No. 1; Reply at 3, ECF No. 10.) Marathon compares this provision to one at issue in *FindWhere Holdings, Inc. v. Systems Environment Optimization, LLC*, in which the Fourth Circuit

---

[14] Both Sections 28.1 and 28.3 appear to limit Marathon's ability to pursue dispute resolution, but do not limit CCI to the same degree. As to CCI, § 28.3 merely states: "The parties hereby agree that exclusive jurisdiction of any dispute arising from this Master Subcontract or the prosecution of the Work will be found in the Commonwealth of Virginia." (MSA § 28.3.) This geographic limitation does not proscribe removal to federal court.

interpreted a contract provision to constitute both a choice-of-law clause and a forum selection clause. 626 F.3d 752, 754 (4th Cir. 2010).

Marathon's reliance on *FindWhere* is misplaced. (*See* Mot. Remand ¶ 12, ECF No. 1.) In that case, the Fourth Circuit addressed a forum selection clause which stated in relevant part that:

> This agreement will be governed by and construed in accordance with the laws of the State of Delaware, USA. Jurisdiction and venue of any dispute or legal action brought by either party arising out of or relating to this Agreement or the commercial relationship of the parties, shall lie exclusively in, or be transferred to, the courts of the State of Virginia, USA.

*FindWhere*, 626 F.3d at 754. The *FindWhere* court interpreted the first sentence of the provision to represent a choice-of-law clause because the parties agreed that "the laws of Delaware" governed the contract. *Id.* The second sentence conferred jurisdiction upon courts of the State of Virginia, and served as a forum selection clause. *Id.*

In contrast, the MSA's "Choice-of-law/Venue" provision does not name any specific court. The provision states that the agreement shall be governed and construed in accordance with the "*laws* of the Commonwealth of Virginia." (MSA § 30 (emphasis added).) Nothing in this language limits this federal Court, or *any* competent court, from applying Virginia law to resolve disputes between the parties that arise under the MSA.[15] Even though the provision is entitled "Choice-of-law/Forum," nothing in the actual language of the provision limits the forum

---

[15] Like *FindWhere*, this sentence constitutes a choice-of-law provision. Unlike *FindWhere*, no second sentence designates a specific judicial forum. Similarly, the provision in *Albemarle Corp.* contained both a choice-of-law and forum selection clause: subjecting the interpretation of the contract to English Law, and the parties to the jurisdiction of the English High Court. 628 F.3d at 646.

in which suit may be brought.[16] While the title of a contract provision may prove instructive, a heading "cannot contradict or rewrite the plain language of the contractual provisions within that section." *In re G-I Holdings, Inc.*, 755 F.3d 195, 203 (3d Cir. 2014); *see also* 17A Am. Jur. 2d Contracts § 372 (2d ed. May 2017 Update) ("Although courts may consider the title of a contract provision or section to interpret a contract, the greater weight must be given to the operative contractual clauses of the agreement.") Section 30 states only that the agreement be construed in accordance with the "laws of the Commonwealth of Virginia." (Mot. Remand ¶ 11.) Because it does not specify which courts may apply those laws, it functions as a choice-of-law provision, and does not preclude this Court's jurisdiction.

Finally, the "Dispute Resolution" provision contained in Section 28 of the MSA attempts, albeit with limited success, to designate a forum. The contract more reasonably can be read if the Section 30 "Choice-of-Law/Venue" provision, which does not name any courts, constitutes a separate choice-of-law clause. Taken together, the "Dispute Resolution" provisions and the "Choice-of-Law/Venue" provision do not limit CCI's ability to remove the case to this Court.

---

[16] The policy preference against interpreting contract provisions to be surplusage is not absolute. *See* Restatement of Contracts (Second) § 203(a) ("The preference for an interpretation which gives meaning to every part of an agreement does not mean that every part is assumed to have legal consequences."). Even though the Court's interpretation of the "Choice-of-law/Venue" provision may render the word "venue" irrelevant, construing the clause as conferring jurisdiction exclusively on Virginia state courts would effectively re-write the provision in its entirety.

Finally, the forward slash separating the words "law" and "venue" likely functions as a designation of possible alternatives, such as "and/or." *Slash*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/slash (last visited June 16, 2019). In light of the complete absence of any language conferring jurisdiction on a particular court or courts, the relationship between "law" and "venue" in the "Choice-of-law/Venue" is likely "either/or," and not "and." *Id.*

## IV. Conclusion

For the foregoing reasons, the Court will deny the Motion to Remand, (ECF No. 6.), which includes Marathon's request for Attorney's Fees. To the extent it stands before the Court, the Court will deny without prejudice CCI's Motion to Dismiss.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: October 25, 2019
Richmond, Virginia